UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MARY WALSH and BEVERLY NANCE, <br><br> Plaintiffs, <br><br> v. <br><br> FRIENDSHIP VILLAGE OF SOUTH COUNTY d/b/a FRIENDSHIP VILLAGE SUNSET HILLS and FV SERVICES, INC., <br><br> Defendants. | Civ. Action No. 4:18-cv-1222 <br><br> **COMPLAINT** |

## INTRODUCTION

1. Plaintiffs Mary Walsh and Beverly Nance are a married couple who have been in a committed relationship with one another for nearly four decades. They bring this action because Friendship Village Sunset Hills ("Friendship Village"), a senior housing community in St. Louis County, Missouri, discriminated against them on the basis of sex—in violation of the federal Fair Housing Act ("FHA") and the Missouri Human Rights Act ("MHRA")—by denying them housing in July 2016.

2. Despite being financially and otherwise qualified for residency in the community, Friendship Village denied Ms. Walsh and Ms. Nance admission, by letter of July 29, 2016, on the basis of a "Cohabitation Policy" that defines marriage as "the union of one man and one woman, as marriage is understood in the Bible."[1]

---

[1] True and accurate copies of the letter and Cohabitation Policy are attached as Exhibits 1 and 2.

3. As they grow older, Ms. Walsh, 72, and Ms. Nance, 68, have wanted to move out of their large, single-family home and into a senior community, seeking a maintenance-free lifestyle, a dining room, social activities, and other amenities, including supports related to aging.

4. Friendship Village is a large three-level "continuing care retirement community," established in 1978, providing senior apartments, assisted living, and a skilled nursing facility.

5. FV Services, Inc., the parent company and sole member of Friendship Village, manages the Friendship Village community and another affiliated community in St. Louis County, Friendship Village Chesterfield.

6. Neither Friendship Village nor FV Services, Inc. is affiliated with any religion or operated by any religious institution or order. Friendship Village is open to the public and does not inquire about the religious beliefs or affiliations of residents.

7. Friendship Village's website says that "[w]ith everything you need, including all levels of care within one community, you never have to leave Friendship Village due to health issues . . . . [U]nlike other St. Louis retirement communities, you have access to our on-site Village Care Center whenever needed, for as long as needed, at virtually no increase in your monthly fee."

8. For these reasons, and because they had several friends living there who were very enthusiastic about Friendship Village, Ms. Walsh and Ms. Nance found Friendship Village very attractive, and made inquiries about moving in. They visited the community multiple times, interacting with residents and staff; had extensive conversations with the community's Residence Director, Carmen Fronczak,[2] about pricing and floorplans; and ultimately paid a deposit of $2,000 and signed a wait list agreement on July 22, 2016.

---

[2] At the time, Ms. Fronczak's surname was Walker.

2

9. Ms. Fronczak told Plaintiffs she would "work with them on closing dates," and instructed them to return on July 29, 2016 to sign the residency agreement and pay an additional deposit on the entrance fee. On July 25, 2016, Ms. Fronczak called Ms. Walsh to ask about the nature of her relationship with Ms. Nance, and Ms. Walsh informed her that she and Ms. Nance are spouses, that they had legally married in Massachusetts in 2009, and that they had been together for 37 years.

10. On July 27, 2016, Ms. Fronczak called Ms. Walsh a second time, and told her that Friendship Village would not accept her and Ms. Nance because they were a same-sex couple, since Friendship Village "defined marriage as between a man and a woman."

11. Ms. Walsh received a letter dated July 29, 2016 from the Corporate Operations Director and Interim Executive Director of Friendship Village, rejecting her request to "share a single unit" with Ms. Nance due to the "long-standing policy of Friendship Village Sunset Hills" (Ex. 1), and enclosing the Cohabitation Policy (Ex. 2).

12. In a formal "Statement of Position" submitted on June 29, 2017 in response to Plaintiffs' housing discrimination complaint filed with the U.S. Department of Housing and Urban Development ("HUD"), Defendants confirmed that they denied Ms. Walsh and Ms. Nance housing because they are a same-sex couple.

13. Until February 28, 2017, Friendship Village was managed by Life Care Services, LLC. During the HUD investigation, Life Care Services provided evidence that it had repeatedly advised Friendship Village—in 2013 and continuing after the rejection of Plaintiffs' application—against the Cohabitation Policy, and that Life Care Services employees would not be the spokespeople for the policy.

3

14. Notwithstanding this advice, Friendship Village, through its attorney, drafted the July 29, 2016 denial letter to Plaintiffs and directed Michael Heselbarth, a Life Care Services employee who was the Corporate Operations Director and Interim Executive Director of Friendship Village, to issue it.

15. On September 14, 2016, the Senior Vice President of Life Care Services sent a letter to Friendship Village expressing concern about the Cohabitation Policy, noting the prohibitions against sex discrimination in the federal Fair Housing Act and Missouri law, and "recommend[ing] that Friendship Village adopt a policy that does not deny admission to same sex married couples [to] avoid a significant risk of civil rights litigation against its current policy."

16. Nonetheless, Defendants maintain and continue to enforce the Cohabitation Policy, which has resulted in the denial of housing to several other same-sex couples.

17. By denying them housing solely because they are women who are married to one another, and by maintaining a Cohabitation Policy that excludes same-sex married couples from Friendship Village, Defendants discriminated—and continue to discriminate—against Ms. Walsh and Ms. Nance on the basis of sex in violation of the FHA and MHRA.

18. As a result of Defendants' discriminatory conduct described above, Ms. Walsh and Ms. Nance have suffered and continue to suffer irreparable loss and injury, including but not limited to economic loss, emotional distress, and the deprivation of their housing and civil rights.

19. Ms. Walsh and Ms. Nance seek a declaratory judgment, permanent injunctive relief, and damages resulting from Defendants' discriminatory actions, as well as their reasonable attorneys' fees and costs.

## JURISDICTION AND VENUE

20. The Court has subject-matter jurisdiction over Plaintiffs' federal law claims under 28 U.S.C. §§ 1331 and 1343, and 42 U.S.C. § 3613(a).

21. The Court has additional remedial authority under 28 U.S.C. §§ 2201 and 2202.

22. The Court has supplemental jurisdiction over Plaintiffs' claims under the Missouri Human Rights Act pursuant to 28 U.S.C. § 1367(a), because they arise out of the same occurrences and transactions as Plaintiffs' federal law claims such that they are part of the same case or controversy.

23. The Court has personal jurisdiction over Defendants, and venue is proper in the Eastern District of Missouri pursuant to 28 U.S.C. § 1391, because all claims arose in this District, the Plaintiffs and Defendants reside in this District, and at all relevant times, Defendants have been doing business in this District.

24. Venue is proper in the Eastern Division of this District pursuant to E.D.Mo. L.R. 3-2.07(B)(2), as the claims for relief arose in St. Louis County, Missouri.

## PARTIES

25. Plaintiff Mary Walsh is a 72-year-old woman who lives in Shrewsbury, St. Louis County, Missouri. She is married to and lives with Plaintiff Beverly Nance.

26. Plaintiff Beverly Nance is a 68-year-old woman who lives in Shrewsbury, St. Louis County, Missouri. She is married to and lives with Plaintiff Mary Walsh.

27. Defendant Friendship Village of South County d/b/a Friendship Village Sunset Hills ("FVSC") is a Missouri nonprofit corporation with its principal place of business in Sunset Hills, St. Louis County, Missouri. FVSC operates and maintains Friendship Village Sunset Hills ("Friendship Village"), a senior living community in Sunset Hills, St. Louis County, Missouri

that is currently controlled and managed by Defendant FV Services, Inc. FVSC is affiliated with another, separately incorporated senior living community in St. Louis County, Friendship Village of West County d/b/a Friendship Village Chesterfield, which is also controlled and managed by Defendant FV Services, Inc.

28.     Defendant FV Services, Inc. is a Missouri nonprofit corporation with its principal place of business in St. Louis County, Missouri. FV Services, Inc. is the parent company and sole member of Defendant Friendship Village, and controls and manages Friendship Village. It is also the parent company and sole member of another senior living community, Friendship Village of West County, d/b/a Friendship Village Chesterfield.

29.     In acting or failing to act as alleged in this Complaint, each Defendant was acting through its employees and/or agents, and is liable on the basis of the acts and omissions of their employees and/or agents.

30.     In acting or failing to act as alleged in this Complaint, each employee, agent, or officer of each Defendant was acting within the course and scope of his or her actual or apparent authority pursuant to such agency, or the alleged acts or omissions of each employee, agent, or officer as agent were subsequently ratified and adopted by each Defendant as principal.

## FACTS

### *Plaintiffs Mary Walsh and Beverly Nance*

31.     Ms. Walsh and Ms. Nance grew up, attended college, and spent their working lives in the St. Louis area. They have been in a committed relationship since 1978, have lived in a single family home in Shrewsbury since 1995, and are both now retired.

6

32. Ms. Walsh and Ms. Nance are lesbians. That is, they are women whose primary emotional, romantic, and sexual attractions are to other women. On July 30, 2009, Ms. Walsh and Ms. Nance legally married in Massachusetts.

33. Missouri has recognized marriages of same-sex couples performed in other jurisdictions, including Plaintiffs' marriage, since October 2014. St. Louis County has issued marriage licenses to same-sex couples since November 2014. Marriages between individuals of the same sex have been legal throughout Missouri and the rest of the country since June 2015.

*Friendship Village*

34. Friendship Village is a continuing care retirement community for senior citizens. It has approximately 379 residences, a licensed 118-bed skilled nursing facility, and an assisted living addition with 61 apartment suites where it provides memory care and assistance to residents requiring support in activities of daily living. It serves approximately 650 residents. In 2015, it received nearly $3.78 million in entrance fees.

35. The Friendship Hills campus includes Sunset Hills Senior Living, an independent living community with private apartments and villas, and Fountain View Assisted Living, an assisted living community with private apartments.

*Plaintiffs' Search for Senior Housing*

36. Several years ago, to plan for their future together, Ms. Walsh and Ms. Nance started exploring retirement homes and senior living communities. They were particularly interested in a senior living community with both independent and assisted living options, as that would provide increasing levels of services and care in the future should either Ms. Walsh or Ms. Nance come to need them.

7

37. Ms. Walsh and Ms. Nance learned about Friendship Village from friends who lived there and who were very enthusiastic about it. Ms. Nance went to lunch at Friendship Village with a former colleague and his wife, and Ms. Walsh and Ms. Nance went to dinner at Friendship Village with a friend of Ms. Walsh's who had moved there with her husband. Their friends loved being at Friendship Village and encouraged the couple to consider moving there.

38. Ms. Walsh and Ms. Nance were especially drawn to Friendship Village because of its Life Care program, which provides a full range of on-site care at the same low cost for life. In other words, they could move into an independent living unit but, if either of them needed a higher level of care in the future, they would be able to access that care on site without having to move or pay more for those services. Based on their search, they learned that Friendship Village was the only senior living community in the St. Louis area with this type of program.

39. In the spring of 2016, Ms. Walsh and Ms. Nance visited Friendship Village several times. They met with Carmen Fronczak, the community's Residence Director, to learn more about the community and inquire about the availability of independent living units. After their initial meeting with Ms. Fronczak, Ms. Walsh and Ms. Nance attended a lunch for prospective residents, where a speaker discussed the advantages of the Life Care program at Friendship Village.

40. The couple met with Ms. Fronczak again, and discussed available floor plans and the entrance fee structure for residency. Ms. Fronczak took Ms. Walsh and Ms. Nance on a tour of the common areas, such as the meeting rooms, pool, and craft rooms, and she showed them an apartment that had a similar floor plan to an apartment that was available at that time.

41. At that meeting, Ms. Walsh told Ms. Fronczak that the couple would have to sell their Shrewsbury house before they could afford to move to Friendship Village, and Ms.

8

Fronczak said that she would "work with them" on a closing date for a unit at Friendship Village to allow them time to sell their home.

42. For several months, Friendship Village had been sending Ms. Walsh and Ms. Nance floor plans, information brochures, and other promotional materials. Ms. Walsh and Ms. Nance felt that Friendship Village was very interested in having them as residents, and recruited the couple much more actively than the other senior living community they had visited to inquire about housing opportunities.

43. The couple was also attracted to Friendship Village because of its social opportunities. In particular, Ms. Nance is very social, and she enjoys group activities such as exercise classes and games that are offered at Friendship Village.

44. After their initial visits, Ms. Walsh and Ms. Nance decided Friendship Village was the best option for them and decided to obtain an apartment there. Ms. Walsh and Ms. Nance again met with Ms. Fronczak at Friendship Village on July 22, 2016. Ms. Fronczak showed the couple a unit, which was similar to the model they were interested in, that was being remodeled and would be available shortly. Ms. Fronczak also told the couple that if they signed all the agreements by the end of July, she would apply the 2015 entrance fee to them for their unit, which was significantly cheaper than the 2016 entrance fee that had gone into effect on July 1, 2016. In addition, Ms. Fronczak said that she would waive the new, additional $12,000 entrance fee for the second person in a couple that had also gone into effect on July 1, 2016.

45. At the July 22, 2016 meeting, the couple signed a wait list agreement and wrote a $2,000 check to Friendship Village to secure their position on the wait list.

46. Ms. Fronczak told the couple that Friendship Village's interim executive director would sign the wait list agreement on behalf of Friendship Village, and that she would call them

to come back in on July 29, 2016 to sign a residency agreement and put down an additional deposit on the entrance fee. Ms. Fronczak told Ms. Walsh and Ms. Nance that they would have 90 days after signing the residency agreement to pay the balance of the entrance fee, but they could get an extension if their home were still on the market at the end of that time.

47. Shortly after the July 22 meeting, Ms. Walsh notified the board of directors of the homeowners' association for the couple's Shrewsbury home that they would be putting their home on the market by September 1, 2016. Ms. Walsh also contacted a realtor to start the process of selling the couple's home.

48. In light of their anticipated move on a short timeframe, the couple canceled a long-planned vacation, losing their nonrefundable airfare.

49. On July 25, 2016, Ms. Fronczak called Ms. Walsh and asked about the nature of her relationship with Ms. Nance. Ms. Walsh informed Ms. Fronczak that the couple were spouses, that they had legally married in Massachusetts in 2009, and that they had been together for 37 years.

50. On July 27, 2016, Ms. Fronczak called Ms. Walsh and told her that Friendship Village would not accept them as residents because they were a same-sex couple. She told Ms. Walsh that Friendship Village "defined marriage as between a man and a woman."

51. Ms. Walsh was stunned when she received this call. It had not even occurred to the couple during their visits to Friendship Village to ask whether same-sex couples could live there, because Ms. Fronczak had been actively encouraging them to move there. Ms. Walsh and Ms. Nance had not taken any steps to hide their relationship when they were touring Friendship Village and meeting with Ms. Fronczak, and the wait list agreement they signed showed that they lived at the same address.

52. Ms. Walsh and Ms. Nance could not believe that in 2016, as a married couple, they would experience such open discrimination in their community. Earlier in their careers, Ms. Walsh and Ms. Nance had been afraid to reveal their sexual orientation at work, because they were worried they would lose their jobs. But after retiring and getting legally married, they thought they were living in a new time of increased acceptance.

53. On July 28, 2016, Ms. Walsh received a call from Michael Heselbarth, the Corporate Operations Director and Interim Executive Director of Friendship Village. Mr. Heselbarth told Ms. Walsh he could not change the policy, which he said was set by Friendship Village's board of directors.

54. Shortly thereafter, Ms. Walsh received a letter from Mr. Heselbarth on the letterhead of Friendship Village Sunset Hills, dated July 29, 2016, thanking her for her interest in Friendship Village. The letter stated that the couple's "request to share a single unit does not fall within the categories permitted by the long-standing policy of Friendship Village Sunset Hills" and enclosed a copy of the company's written "Cohabitation Policy." (Exs. 1, 2.)

55. The Cohabitation Policy states that Friendship Village "will permit the cohabitation of residents within a single unit only if those residents, while residing in said unit, are related as spouses by marriage, as parent and child or as siblings," defining "[t]he term 'marriage' as used in this policy means the union of one man and one woman, as marriage is understood in the Bible." The Cohabitation Policy states that it "has applied to all new residents for many years, [and] will continue to apply to all new residents."

56. Defendants are not affiliated with any religion or operated by any religious institution or order. Friendship Village is open to the public and does not inquire about the religious beliefs or affiliations of residents.

11

57. In addition to denying housing to Ms. Walsh and Ms. Nance, Defendants have denied housing to other same-sex couples pursuant to the Cohabitation Policy.

58. Defendants have not inquired about, or sought documentation of, the marital status of different-sex couples applying to live at Friendship Village.

59. In the last several years, there have been different-sex unmarried couples who share or shared a single housing unit at Friendship Village.

*HUD Complaint and Investigation*

60. On October 25, 2016, Ms. Walsh and Ms. Nance filed a housing discrimination complaint against Friendship Village with the U.S. Department of Housing and Urban Development ("HUD"), alleging unlawful discrimination on the basis of sex.

61. On October 27, 2016, pursuant to 42 U.S.C. § 3610(f), HUD referred the complaint to the Missouri Commission on Human Rights for investigation, having determined that "the fair housing law that the Missouri Commission on Human Rights enforces is substantially equivalent" to the Fair Housing Act. On December 6, 2016, the Missouri Commission on Human Rights voluntarily waived the complaint back to HUD for investigation.

62. HUD conducted an investigation from December 6, 2016 until June 6, 2018, when Plaintiffs voluntarily withdrew their complaint so that they could pursue their claims against Defendants in federal court.

63. HUD's investigation revealed that, beginning in 2013, Life Care Services repeatedly advised the Board of Directors of Friendship Village that it should abandon the Cohabitation Policy, and that Life Care Services employees would not be the spokespeople for the policy.

64. On September 14, 2016, the Senior Vice President of Life Care Services sent a letter to Friendship Village expressing concern about the Cohabitation Policy, noting the prohibition against sex discrimination in the federal Fair Housing Act and Missouri law, and "recommend[ing] that Friendship Village adopt a policy that does not deny admission to same sex married couples [to] avoid a significant risk of civil rights litigation against its current policy."

65. The HUD investigation further revealed that Friendship Village continues to maintain the Cohabitation Policy, and that Defendants enforce this policy at both Friendship Village and its affiliated property, Friendship Village Chesterfield.

* * *

66. By refusing housing to Ms. Nance and Ms. Walsh and by maintaining the written Cohabitation Policy, Defendants, directly and through their representatives and agents, unlawfully discriminated and continue to discriminate against Ms. Walsh and Ms. Nance on the basis of sex.

67. Plaintiffs were subjected to this discrimination both because they are women and because each is married to a woman. If Ms. Walsh were a man seeking housing with Ms. Nance, a woman, Friendship Village would not have denied them admission. Likewise, if Ms. Walsh's spouse, Ms. Nance, were a man, Friendship Village would not have denied the couple housing. In other words, but for the sex of each Plaintiff and/or the sex of her spouse, the couple would have been able to obtain housing at Friendship Village.

68. Plaintiffs were further subjected to this discrimination because they are women who do not conform to traditional sex stereotypes, including that a married woman should be in a

different-sex relationship; that a married woman's spouse should be a man; and that women should be attracted to and form relationships with men, not women.

69.     Defendants' discrimination has deprived Ms. Walsh and Ms. Nance of the considerable benefits available to residents of Friendship Village.

## INJURY TO PLAINTIFFS

70.     By denying housing to Ms. Walsh and Ms. Nance due to their sex and by maintaining a Cohabitation Policy that excludes same-sex married couples, Defendants, both directly and through their representatives and agents, discriminated against Plaintiffs on the basis of sex. As a result of Defendants' discriminatory conduct described above, Plaintiffs have suffered and continue to suffer irreparable loss and injury, including but not limited to economic loss, emotional distress, and the deprivation of their housing and civil rights.

71.     After being actively encouraged by Friendship Village for several months to obtain housing there, Ms. Walsh and Ms. Nance were shocked to be turned away because of who they are and felt humiliated, stigmatized, and demeaned. They no longer feel like equal members of their community and feel that their security and dignity have been stripped away.

72.     Defendants, in acting, refusing to act, or otherwise failing to act as alleged in this Complaint, were acting through their employees, agents, and/or representatives, and are liable on the basis of the acts and omissions of their employees, agents, and/or representatives.

73.     Defendants' conduct described above was willful, intentional, and knowing, and/or was implemented with callous and reckless disregard for Plaintiffs' rights under the law. Despite repeated warnings from Life Care Services that denying housing to married same-sex couples pursuant to the Cohabitation Policy raised a significant risk of liability under federal and

14

state civil rights laws, Defendants denied housing to Plaintiffs and continued to maintain and enforce the Cohabitation Policy.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### Federal Fair Housing Act, 42 U.S.C. § 3604

74. Plaintiffs reallege and incorporate by reference all allegations contained in paragraphs 1-73 as if set forth fully here.

*42 U.S.C. § 3604(a)*

75. Under 42 U.S.C. § 3604(a), it is unlawful to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of sex.

76. Defendants, through their actions described above, refused to negotiate for the sale or rental of a dwelling unit at Friendship Village to Ms. Walsh and Ms. Nance, and otherwise made unavailable and denied a dwelling unit to them, because of sex, in violation of 42 U.S.C. § 3604(a). Specifically, each Plaintiff was denied housing at Friendship Village because of her own sex (female) and because of the sex of her spouse (female), because if either Plaintiff had been a man married to a woman, they would not have been denied housing. Furthermore, Defendants denied Plaintiffs housing because they do not conform to traditional sex stereotypes, including that a married woman should be in a different-sex relationship; that a married woman's spouse should be a man; and that women should be attracted to and form relationships with men, not women.

*42 U.S.C. § 3604(c)*

77. Under 42 U.S.C. § 3604(c), it is unlawful to make, print, or publish, or cause to be made, printed, or published, any notice or statement with respect to the sale or rental of a

dwelling that indicates any preference, limitation, or discrimination based on sex, or an intention to make any such preference, limitation, or discrimination.

78. Defendants' written Cohabitation Policy is a printed notice and/or statement that indicates a clear preference, limitation, or discrimination based on sex, specifically that married couples must be a man and a woman, and not of the same sex, in violation of 42 U.S.C. § 3604(c). The Cohabitation Policy further discriminates on the basis of sex because it relies on impermissible sex-based stereotypes, including that a married woman should be in a different-sex relationship; that a married woman's spouse should be a man; and that women should be attracted to and form relationships with men, not women. The Cohabitation Policy, which states that it "will continue to apply to all new residents," also indicates an intention to continue to discriminate on the basis of sex in further violation of 42 U.S.C. § 3604(c).

79. The verbal statements made to Ms. Walsh by Defendants' employees or agents, Ms. Fronczak and Mr. Heselbarth, on July 27, 2016 and July 28, 2016, in which each employee communicated Defendants' policy of denying housing to same-sex married couples, were unlawful statements with respect to the sale or rental of a dwelling indicating a preference, limitation, or discrimination based on sex in violation of 42 U.S.C. § 3604(c).

80. The July 29, 2016 letter from Defendants' employee/agent, Mr. Heselbarth, confirming that Friendship Village was denying housing to Plaintiffs pursuant to the enclosed Cohabitation Policy was a printed statement with respect to the sale or rental of a dwelling indicating a preference, limitation, or discrimination based on sex, in further violation of 42 U.S.C. § 3604(c).

## SECOND CAUSE OF ACTION
### Missouri Human Rights Act, Mo. Rev. Stat. § 213.040

81.    Plaintiffs reallege and incorporate by reference all allegations contained in paragraphs 1-80 as if set forth fully here.

82.    On October 27, 2016, HUD referred Plaintiffs' October 25, 2016 administrative complaint to the Missouri Commission on Human Rights ("MCHR"). By letter dated October 27, 2016, the MCHR informed Plaintiffs that their complaint had been dual-filed with MCHR and HUD. On December 6, 2016, MCHR voluntarily waived the complaint back to HUD for investigation.

83.    On July 24, 2018, Plaintiffs requested a right-to-sue letter from MCHR, but had not obtained one as of the date of the filing of this Complaint.

*Mo. Rev. Stat. § 213.040(1)*

84.    Under Mo. Rev. Stat. § 213.040(1), it is an unlawful housing practice to refuse to negotiate for the sale or rental of, or to deny or otherwise make unavailable, a dwelling to any person because of sex.

85.    Defendants, through their actions described above, refused to negotiate for the sale or rental of a dwelling unit at Friendship Village to Ms. Walsh and Ms. Nance, and otherwise made unavailable and denied a dwelling unit to them, because of sex, in violation of Mo. Rev. Stat. § 213.040(1). Specifically, each Plaintiff was denied housing at Friendship Village because of her own sex (female) and because of the sex of her spouse (female), because if either Plaintiff had been a man married to a woman, they would not have been denied housing. Furthermore, Defendants denied Plaintiffs housing because they do not conform to traditional sex stereotypes, including that a married woman should be in a different-sex relationship; that a

17

married woman's spouse should be a man; and that women should be attracted to and form relationships with men, not women

*Mo. Rev. Stat. § 213.040(3)*

86. Under Mo. Rev. Stat. § 213.040(3), it is an unlawful housing practice to make, print, or publish, or cause to be made, printed, or published any notice, statement or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination because of sex, or an intention to make any such preference, limitation, or discrimination.

87. Defendants' written Cohabitation Policy is a printed notice and/or statement that indicates a clear preference, limitation, or discrimination based on sex, specifically that married cohabiting couples must be a man and a woman, and not of the same sex, in violation of Mo. Rev. Stat. § 213.040(3). The Cohabitation Policy further discriminates on the basis of sex because it relies on impermissible sex-based stereotypes, including that a married woman should be in a different-sex relationship; that a married woman's spouse should be a man; and that women should be attracted to and form relationships with men, not women. The Cohabitation Policy, which states that it "will continue to apply to all new residents," also indicates an intention to continue to discriminate on the basis of sex in further violation of Mo. Rev. Stat. § 213.040(3).

88. The verbal statements made to Ms. Walsh by Defendants' employees or agents, Ms. Fronczak and Mr. Heselbarth, on July 27, 2016 and July 28, 2016, in which each employee communicated Defendants' policy of denying housing to same-sex married couples, were unlawful statements with respect to the sale or rental of a dwelling indicating a preference, limitation, or discrimination based on sex in violation of Mo. Rev. Stat. § 213.040(3).

89.     The July 29, 2016 letter from Defendants' employee/agent, Mr. Heselbarth, confirming that Friendship Village was denying housing to Plaintiffs pursuant to the enclosed Cohabitation Policy was a printed statement with respect to the sale or rental of a dwelling indicating a preference, limitation, or discrimination based on sex, in further violation of Mo. Rev. Stat. § 213.040(3).

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs Mary Walsh and Beverly Nance respectfully request that the Court grant the following relief:

a.    A declaratory judgment that Defendants' actions, statements, and policies violated and continue to violate the federal Fair Housing Act, 42 U.S.C. § 3604(a) & (c), and the Missouri Human Rights Act, Mo. Rev. Stat. § 213.040(1) & (3);

b.    A permanent injunction enjoining and restraining Defendants and their agents, subsidiaries, successors, affiliates, employees, and all other persons in active concert or participation with them, from denying housing to Mary Walsh and Beverly Nance on the basis of sex; from discriminating against same-sex married couples in the sale, leasing, or rental of housing; and from making or printing notices or statements indicating a preference, limitation, or discrimination against same-sex married couples, including an order that Defendants develop and implement policies, practices, and procedures to prevent unlawful discrimination on the basis of sex and to eliminate, to the extent practicable, the effects of Defendants' unlawful policies and practices;

c.    An award of actual and compensatory damages to Plaintiffs in an amount that would fully compensate them for their injuries incurred as a result of Defendants'

        discriminatory housing practices and conduct, pursuant to 42 U.S.C. § 3613(c) and Mo. Rev. Stat. § 213.111(2);

    d.    An award of punitive damages against Defendants in an amount sufficient to deter similar discriminatory conduct in the future, as permitted by 42 U.S.C. § 3613(c) and Mo. Rev. Stat. § 213.111(2);

    e.    Plaintiffs' costs and attorneys' fees under 42 U.S.C. § 3613(c) and Mo. Rev. Stat. § 213.111(2); and

    f.    Such other relief as the Court deems just and equitable.

DATED: July 25, 2018

Respectfully submitted,

/s/ Jessie Steffan

| | |
|---|---|
| Amy Whelan* | Anthony E. Rothert, #44827MO |
| Julie Wilensky* | Jessie Steffan, #64861MO |
| NATIONAL CENTER FOR LESBIAN RIGHTS | ACLU OF MISSOURI FOUNDATION |
| 870 Market Street, Suite 370 | 906 Olive Street, Suite 1130 |
| San Francisco, CA 94102 | St. Louis, Missouri 63101 |
| (415) 392-6257 | (314) 652-3114 |
| awhelan@nclrights.org | arothert@aclu-mo.org |
| jwilensky@nclrights.org | jsteffan@aclu-mo.org |
| | |
| Michael Allen* | Gillian R. Wilcox, #61278MO |
| Joseph J. Wardenski* | ACLU OF MISSOURI FOUNDATION |
| RELMAN, DANE & COLFAX, PLLC | 420 W. 34th Street, Suite 420 |
| 1225 19th Street, NW, Suite 600 | Kansas City, MO 64111 |
| Washington, DC 20036 | (816) 470-9938 |
| (202) 728-1888 | gwilcox@aclu-mo.org |
| mallen@relmanlaw.com | |
| jwardenski@relmanlaw.com | Arlene Zarembka, #25900MO |
| | Attorney at Law |
| | 9378 Olive Blvd., Suite 206 |
| | St. Louis, MO 63132 |
| | (314) 567-6355 |
| | arlenezarembkalaw@sbcglobal.net |

*Attorneys for Plaintiffs*

\* Application for *pro hac vice* admission forthcoming

20