UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| MARY WALSH and | ) | |
| BEVERLY NANCE, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 4:18-cv-1222 |
| | ) | |
| FRIENDSHIP VILLAGE OF SOUTH | ) | |
| COUNTY d/b/a FRIENDSHIP VILLAGE | ) | |
| SUNSET HILLS and | ) | |
| FV SERVICES, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR JUDGMENT ON THE PLEADINGS

Defendants Friendship Village of South County d/b/a Friendship Village Sunset Hills ("Friendship Village" or "Defendant Friendship Village") and FV Services, Inc. ("FV Services" or "Defendant FV Services") (collectively, "Defendants"), by and through their attorneys, file this Memorandum in Support of their Motion for Judgment on the Pleadings.[1]

## INTRODUCTION & BACKGROUND

Plaintiffs Mary Walsh and Beverly Nance (collectively, "Plaintiffs") initiated this lawsuit on July 25, 2018, when they filed their original Complaint with the Court. *See* Plaintiffs' Complaint. In their original Complaint, Plaintiffs brought claims of alleged housing discrimination under both the Fair Housing Act ("FHA") and the Missouri Human Rights Act ("MHRA") against Defendant Friendship Village and Defendant FV Services. *See generally*, Complaint. After Defendants filed their Answer and a Motion for Judgment on the Pleadings,

---

[1] Defendants respectfully note that the Court previously granted Defendants' Motion for Leave to File in Excess of Page Limitation. ECF No. 23.

Plaintiffs filed an Amended Complaint on October 5, 2018.  As reflected in the Amended Complaint, Plaintiffs have withdrawn their claims under the MHRA, but the FHA claims remain. *See generally*, Amended Complaint.  Specifically, Plaintiffs allege that particular acts and omissions of Defendant Friendship Village in 2016 constitute sex discrimination in violation of the FHA.  *Id.*  In particular, the Amended Complaint alleges both:  (1) discriminatory refusal to negotiate for the sale or rental of a dwelling unit at Friendship Village; and (2) discriminatory notices and/or statements with respect to the sale or rental of a dwelling.[2]  *See* Amended Complaint at ¶¶ 75-80.  At the time of the alleged wrongdoing referenced in the Amended Complaint, FV Services did not exist, as it did not come into existence until March 2017.  *See* Defendants' Answer to Amended Complaint ("Answer") at ¶¶ 5, 27; Exhibit A to Answer.

Prior to filing this lawsuit, Plaintiffs filed a housing discrimination complaint in October 2016 that was dual-filed with both the federal Department of Housing and Urban Development ("HUD") and the Missouri Commission on Human Rights ("MCHR").  *See* Answer at ¶ 60; Exhibit B to Answer.  That complaint – which named Friendship Village, Carmen Walker, and Michael Heselbarth as respondents – only alleged "discriminatory refusal to rent" on the basis of sex and religion.  *See* Answer at ¶ 60; Exhibit B to Answer.  The MCHR – in a letter dated December 9, 2016 – subsequently issued its "Determination," stating:

> The investigation of the above-captioned complaint has determined that the Missouri Commission on Human Rights (MCHR) lacks jurisdiction over this matter because the complaint did not involve a category covered by the Missouri Human Rights Act.  Therefore, MCHR is administratively closing this case and terminating all MCHR proceedings relating to your complaint. If you are aggrieved by this decision, then you can appeal by filing a petition under § 536.150 of the Revised Statutes of Missouri in state circuit court. Any such petition must be filed in the circuit court of Cole County.

---

[2] Both of these types of claims can be collectively referred to as Plaintiffs' "sex discrimination" claims.  Although there are certainly distinctions between these two types of claims, they both require Plaintiffs to establish sex-based discriminatory conduct here.

*See* Answer at ¶ 61; Exhibit C to Answer.  Plaintiffs did not appeal the MCHR's determination.

*See* Answer at ¶ 61.

Subsequent to the MCHR's Determination, Plaintiffs' complaint in the remaining HUD

matter was amended, adding claims of "discriminatory advertising, statements and notices" and

"discriminatory terms, conditions, privileges, or services and facilities."  *See* Answer at ¶ 62;

Exhibit E to Answer.  HUD investigated Plaintiffs' amended complaint until June 2018, when

Plaintiffs withdrew their amended complaint.  *See* Answer at ¶ 62; Exhibit F to Answer.  Neither

the original nor amended complaint named FV Services as a respondent or otherwise mentioned

or referenced FV Services.  *See* Answer at ¶¶ 60, 62; Exhibit B to Answer; Exhibit E to Answer.

On October 19, 2018, contemporaneously with the filing of their Motion and this

Memorandum in Support, Defendants Friendship Village and FV Services filed their Answer to

Plaintiffs' Amended Complaint, responding to Plaintiffs' allegations and attaching as exhibits

various relevant public records[3] pertaining to Plaintiffs' administrative complaint proceedings

and the genesis of FV Services as an organization.

Even accepting Plaintiffs' allegations as true (for the limited purposes of this Motion),[4]

the Amended Complaint fails to state a cognizable claim for sex discrimination under the FHA.

But even if the Court determines that Plaintiffs have stated a claim for sex discrimination, the

---

[3] Specifically, Defendants' Answer references – and attaches as exhibits – the following documents:  FV Service's Articles of Incorporation (filed with the Missouri Secretary of State) (Exhibit A to Answer); October 2016 Notice and Complaint from the MCHR (Exhibit B to Answer); December 2016 MCHR Determination Letter (Exhibit C to Answer); December 2016 MCHR letter to HUD (Exhibit D to Answer); December 2016 Notice and Amended Complaint from HUD (Exhibit E to Answer); June 2018 Withdrawal Letter from HUD (Exhibit F to Answer).  As discussed more fully below, it is proper for the Court to consider these documents in ruling on this Motion.

[4] Defendants do not admit that Plaintiffs' operative allegations are true (unless otherwise admitted in the Answer), but treat them hypothetically as true for purposes of the present Motion.

pleadings in this matter clearly demonstrate that any claim against Defendant FV Services must be dismissed.  The Amended Complaint on its face fails to state a claim against FV Services, which did not exist at the time of the alleged events forming the basis of Plaintiffs' claims.  For these reasons – and as discussed more fully below – Plaintiffs' claims must be dismissed.

## <u>LEGAL STANDARD</u>

A party is entitled to judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure if, after the pleadings have closed, the moving party establishes that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law. Fed.R.Civ.P. 12(c); *see also, e.g., United States v. Any and All Radio Station Transmission Equip.*, 207 F.3d 458, 462 (8th Cir. 2000); N*at'l Car Rental Sys., Inc. v. Computer Assocs. Int'l, Inc.*, 991 F.2d 426, 428 (8th Cir. 1993); *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990).  A Rule 12(c) motion for judgment on the pleadings is reviewed under the same standard as a 12(b)(6) motion to dismiss.  *Gallagher v. City of Clayton*, 699 F.3d 1013, 1016 (8th Cir. 2012) (applying 12(b)(6) standard to motion for judgment on the pleadings); *Boswell v. Panera Bread Co.*, 91 F. Supp. 3d 1141, 1144 (E.D. Mo. 2015).

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.  The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  If a complaint pleads facts that are "merely consistent with a defendant's liability, it stops short of the line between possibility and probability of entitlement to relief."  *Id.*

(internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 557).  Although a reviewing court should accept all <u>well-plead</u> factual allegations in the complaint as true, *Neitzke v. Williams*, 490 U.S. 319, 326 (1989), the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555.  Fed. R. Civ. P. 8 "demands more than an unadorned, the defendant-unlawfully-harmed me accusation"; it "does not empower [a plaintiff] to plead the bare elements of his cause of action . . . and expect his complaint to survive." *Iqbal*, 556 U.S. at 678, 687.  Importantly, "[a] district court . . . is not required to divine the litigant's intent and create claims that are not clearly raised, and it need not conjure up unpled allegations to save a complaint." *Ginsburg v. InBev NV/SA*, 649 F.Supp.2d 943, 946 (E.D. Mo. 2009) (quoting *Gregory v. Dillard's, Inc.*, 565 F.3d 464, 473 (8th Cir. 2009)).

"In considering a Rule 12(c) motion, the Court may consider the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record." *Schnuck Markets, Inc. v. First Data Merchant Data Services Corp.*, 86 F.Supp.3d 1055, 1059 (E.D. Mo. 2015) (quoting *Nationwide Mut. Ins. Co. v. Harris Medical Associates, LLC*, 973 F.Supp.2d 1045, 1051 (E.D.Mo.2013) (citing *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir.1999))).  This includes "any facts of which the district court will take judicial notice." *Id.* (quoting *Unite Here Local 74 v. Pinnacle Entertainment, Inc.*, No. 4:10CV00747, 2011 WL 65934, at *2–3 (E.D. Mo. Jan. 10, 2011) (quoting 5C Charles Alan Wright & Arthur Miller, Federal Practice and Procedure § 1367 (3d ed. 2010))).  Accordingly, it is proper for the Courts to consider the exhibits attached to Defendants' Answer in ruling on this Motion, as these documents are unquestionably part of the pleadings, embraced by the pleadings, public records, and/or otherwise entitled to judicial notice. *Fabisch v. University of Minnesota*, 304 F.3d 797, 802-03 (8th Cir. 2002) (in granting defendant's motion for judgment on the

pleadings based on plaintiff's failure to exhaust administrative remedies, finding that EEOC charge documentation is public record and that considering such does not convert a Rule 12(c) motion to a summary judgment motion).

## ARGUMENT

## I.  PLAINTIFFS FAIL TO STATE A CLAIM FOR SEX DISCRIMINATION UNDER THE FAIR HOUSING ACT

### A.    *The Amended Complaint Clearly Outlines Plaintiffs' Legal Theories*

Plaintiffs' Amended Complaint – filled with detailed legal conclusions – demonstrates that sexual orientation lies at the heart of their purported sex discrimination claims and that Plaintiffs seek to expand the scope of the FHA's prohibition of "sex"-based discrimination. Various portions of the Amended Complaint make this clear.  For instance:

- Paragraph 32:  "Ms. Walsh and Ms. Nance are lesbians. That is, they are women whose primary emotional, romantic, and sexual attractions are to other women. On July 30, 2009, Ms. Walsh and Ms. Nance legally married in Massachusetts."

- Paragraph 52:  "Ms. Walsh and Ms. Nance could not believe that in 2016, as a married couple, they would experience such open discrimination in their community. Earlier in their careers, Ms. Walsh and Ms. Nance had been afraid to reveal their relationship with each other or their sexual orientation at work, because they were worried they would lose their jobs. But after retiring and getting legally married, they thought they were living in a new time of increased acceptance."

- Paragraph 68:  "Plaintiffs were further subjected to this discrimination because they are women who do not conform to traditional sex stereotypes, including that a married woman should be in a different-sex relationship; that a married woman's spouse should be a man; and that women should be attracted to and form relationships with men, not women."

*See* Amended Complaint at ¶¶ 32, 52, 68.  Several other paragraphs in the Amended Complaint – despite attempting to mask the issue as one of sex discrimination – similarly reinforce the theme of sexual orientation – for instance, by relying on the existence of Plaintiffs' homosexual relationship.  *See* Amended Complaint at ¶¶ 18 ("women who are married to one another";

"excludes same-sex married couples"), 67 ("because each is married to a woman"; references to Plaintiffs' "spouse[s]" and "the couple"), 70 ("excludes same-sex married couples"), 76 (references to Plaintiffs' "spouse[s]" and their being "married"), 78 (references to "married couples," "married wom[e]n," and "married wom[e]n's spouse[s]").  Given the level of detail in these paragraphs, it is clear what legal theories Plaintiffs' are attempting to utilize in support of their claims, and each of those theories are directly rooted in Plaintiffs' sexual orientation.

In essence, Plaintiffs' legal theories – as outlined in the aforementioned Amended Complaint passages – can be characterized in three ways.  First, and as discussed immediately below, to the extent Plaintiffs are seeking to convince the Court that they have alleged straightforward sex discrimination, Plaintiffs are arguing that discrimination based on their sexual orientation is necessarily discrimination on the basis of sex.  Second, and derivative of the first type of argument, to the extent Plaintiffs both emphasize the sex of their spouse (each other), Plaintiffs are arguing that receiving less favorable treatment because of their association with a person of a particular sex constitutes sex discrimination (i.e., the "associational" theory).  *See, e.g.,* Amended Complaint at ¶¶ 18, 67, 70, 76, 78.  Third, Plaintiffs argue that discrimination based on their sexual orientation constitutes unlawful discrimination on the basis of non-conformity with sex stereotypes.  *See, e.g.,* Amended Complaint at ¶¶ 68, 76, 78.  None of these legal theories support a claim of sex discrimination under the FHA.

Defendants emphasize that Plaintiffs are not alleging a traditional theory of sex discrimination.  One of the basic inquiries for disparate treatment sex discrimination claims (when brought by females) is whether similarly-situated men were or are treated more favorably.  *See Jones v. Frank*, 973 F.2d 673, 676-77 (8th Cir. 1992) ("[The plaintiff's] claim of unlawful disparate treatment must rest on proof that she and the three men are 'similarly situated in all

relevant respects.'") (quoting *Lanear v. Safeway Grocery*, 843 F.2d 298, 301 (8th Cir.1988));

*Roach v. Vallen Safety Supply Co.*, 14 Fed. App'x 711, 712 (8th Cir. 2001) (concluding that the

plaintiff's disparate treatment claim failed due to the lack of evidence that similarly-situated

males were treated more favorably); *Denn v. CSL Plasma, Inc.*, 816 F.3d 1027, 1034-35 (8th Cir.

2016) (finding the plaintiff's sex discrimination claim to be precluded where the defendant had

not treated males less favorably than similarly-situated females).[5]   Plaintiffs' Amended

Complaint, however, does not allege that similarly-situated[6] males would be treated more

favorably under Friendship Village's alleged policy.   Indeed, Plaintiffs are alleging that male

same-sex couples would be denied by Friendship Village as well because, on the face of the

Amended Complaint, Friendship Village's alleged policy would apply equally to male same-sex

couples.  *See, e.g.,* Amended Complaint at ¶¶ 55, 57.  Thus, as much as Plaintiffs would like the

Court to think that their Amended Complaint invokes a straightforward application of basic sex

discrimination principles, that is simply not the case here.   Rather, and as demonstrated by the

above-identified  Amended  Complaint  paragraphs  repeatedly  underscoring  Plaintiffs'

homosexual status, Plaintiffs' claims are based on legal theories that would require the Court to

provide FHA protections to Plaintiffs on the basis of their sexual orientation.  But – as discussed

more fully below – sexual orientation is not a protected category under the FHA.  *See infra.*

---

[5]  Although  these  cited  cases  involved  claims  of  employment  discrimination,  Defendants
emphasize that Title VII principles and context are directly analogous and applicable to this
Court's analysis of the FHA.  For this reason, federal courts have consistently applied Title VII
principles and analysis in the FHA context.  *See* Section B.1., Note 9, p. 11.

[6] Given that comparators must be similarly-situated in all relevant aspects, "similarly-situated" in
this case must necessarily mean individuals in a same-sex relationship and marriage seeking to
share a single unit at Friendship Village.

**B.**      ***Plaintiffs' Legal Theories Do Not Support Their Sex Discrimination Claims***

Plaintiffs fail to state a claim for sex discrimination under the FHA because none of the aforementioned legal theories can be used to establish a cognizable sex discrimination claim.

**1.      This Court Rejected Plaintiffs' Legal Theories in its *Horton* Decision**

Based on long-standing Eighth Circuit precedent, this Court has already – and recently – rejected the types of sex discrimination theories espoused by Plaintiff.  *See Horton v. Midwest Geriatric Management, LLC*, No. 4:17CV2324 JCH, 2017 WL 6536576 (E.D. Mo. Dec. 21, 2017).  In the *Horton* case, in the analogous Title VII context, the plaintiff alleged that the defendant "unlawfully discriminated against him on the basis of sex when it withdrew its offer of employment after learning of Plaintiff's homosexual relationship." *Id.* at *3.[7]  In support of his claim, the plaintiff invoked the same three theories utilized by Plaintiffs here.  *See id.*  In granting the defendant's motion to dismiss for failure to state a claim, this Court rejected each of these legal theories.  *Id.* at *3-4.

In rejecting the first theory, this Court noted that "[s]exual orientation . . . is not explicitly a protected characteristic under Title VII" and emphasized the existence of a number of failed proposed statutory amendments that would have made sexual orientation a protected class.  *Id.* at *3.[8]  This Court also relied on *Williamson v. A.G. Edwards & Sons, Inc.*, 876 F.2d 69 (8th Cir. 1989), in which the Eighth Circuit "squarely held" that "Title VII does not prohibit discrimination against homosexuals." *Horton*, 2017 WL 6536576 at *3 (quoting *Williamson*,

---

[7] Defendants emphasize that this is essentially the same allegations made by Plaintiffs here, but in the housing arena.

[8] As discussed below, the same is true in this case.  Sexual orientation is not explicitly included in the FHA's list of protected classes, and Congress has rejected a number of proposed amendments to the FHA that would have prohibited discrimination on the basis of sexual orientation.

876 F.2d at 70).   The Court then swiftly rejected the second theory – the "associational" argument – pointing again to *Williamson*.  *Id.* at *4.

In rejecting the third legal theory – non-conformity with sex stereotypes – this Court noted that sex stereotyping "can violate Title VII" under certain circumstances.  *Id.*  But the Court refused to adopt a broad view of "sex stereotyping" claims, noting that "[c]ourts have routinely rejected attempts to use a sex-stereotyping theory to bring . . . what is in essence a claim for discrimination on the basis of sexual orientation."  *Id.* (brackets in original) (quoting *Pambianchi v. Arkansas Tech University*, No. 4:13CV46 KGB, 2014 WL 11498236, at *4 (E.D. Ark. Mar. 14, 2014).  The Court further stated:

> In order to determine whether a plaintiff has stated a claim for discrimination, "most courts generally attempt to distinguish between discrimination based on stereotypical notions of femininity and masculinity and that based on sexual orientation, determining the former is actionable . . . while the latter is not." . . . Courts have acknowledged the difficulty in drawing a line between sex stereotypes and notions of heterosexuality and homosexuality.  Nevertheless, most courts determine the distinction is necessary to adhere to binding precedent that sexual orientation is not a protected characteristic[.]

*Id.* (quoting *Pambianchi*, 2014 WL 11498236, at *5).

Ultimately, the Court determined that the plaintiff's sex-stereotyping claim was non-actionable because it was directly derived from his sexual orientation.  *Id.* ("Sexual orientation alone cannot be the alleged gender non-conforming behavior that gives rise to an actionable . . . claim under a sex-stereotyping theory[.]") (quoting *Pambianchi*, 2014 WL 11498236, at *5).

As discussed more fully below, the same conclusions made by the Court in the *Horton* decision – and by the Eighth Circuit in *Williamson* – should be utilized here and, thus, result in the dismissal of Plaintiffs' FHA sex discrimination claims.  *See Wetzel v. Glen St. Andrew Living Community, LLC*, No. 17-1322, 2018 WL 4057365, at *3, --- F.3d --- (7th Cir. Aug. 27, 2018) (finding that court's prior Title VII sex discrimination ruling in *Hively v. Ivy Tech Community*

*College of Indiana*, 853 F.3d 339 (7th Cir. 2017) – regarding sexual orientation and the scope of

"sex discrimination" under Title VII – to "appl[y] with equal force under the FHA").[9]

### 2. The Fair Housing Act Does Not Provide the Protections Sought by Plaintiffs

As with Title VII, sexual orientation is not a protected characteristic under the Fair

Housing Act.  Textually, the FHA provides that "it shall be unlawful" – *inter alia* – "[t]o  refuse

to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental

of, or otherwise make unavailable or deny, a dwelling to any person because of race, color,

---

[9] Defendants emphasize that in addition to the *Wetzel* decision, other federal courts' treatment of Title VII and the FHA support the use and application of Title VII principles and analysis in the analogous FHA context. *See Thomas v. Osegueda*, No. 2:15–CV–0042–WMA, 2015 WL 3751994, *4 and n.1 (N.D. Ala. June 16, 2015) (discussing case law from "the analogous context of Title VII" in evaluating sex-stereotyping claims) ("Most courts applying the FHA . . . have analogized it to Title VII of the Civil Rights Act of 1964 . . . , which prohibits discrimination in employment." (citing *Larkin v. State of Mich. Dep't of Soc. Servs.*, 89 F.3d 285, 289 (6th Cir.1996)). Notably, the same disparate treatment claim analysis and framework is used in both Title VII and FHA cases.  *See, e.g., Gallagher v. Magner*, 619 F.3d 823, 831 (8th Cir. 2010); *Willis v. Morgan*, No. 4:15CV00037 SNLJ, 2016 WL 3458158, *2 (E.D. Mo. June 24, 2016); *Metropolitan St. Louis Equal Housing and Opportunity Council v. City of Maplewood, Missouri*, No. 4:17CV886 RLW, 2017 WL 6278882, *3 (E.D. Mo. Dec. 8, 2017).  In *Young v. Hagar-Mace*, the Western District of Missouri looked to Title VII case law in evaluating an appointment of counsel issue under the FHA, given the similarities between the two statutes.  No. 4:16–CV–00969–DGK, 2017 WL 2729103, *2 (W.D. Mo. June 23, 2017).  In *Badami v. Flood*, the Eighth Circuit applied a Supreme Court decision on Title VII punitive damages to the FHA, noting that the same punitive damages standard applied under both statutes.  214 F.3d 994, 997 (8th Cir. 2000).   In *Texas Dept. of Housing and Community Affairs v. Inclusive Communities Project, Inc.*, the Supreme Court discussed thoroughly and relied heavily on Title VII in principles in finding that the FHA permitted disparate impact claims.  135 S.Ct. 2507 (2015) (noting that it was "necessary to consider" Title VII – a "relevant statute" – before turning to the FHA) ("Applied here, the logic of [Title VII case law] and [ADEA case law] provides strong support for the conclusion that the FHA encompasses disparate-impact claims.").   In doing so, the Supreme Court highlighted the statutes' "similarity in text and structure" and found Title VII applicable despite the fact the FHA did not have identical prohibitive language.  *Id.* at 2519 ("Congress thus chose words that serve the same purpose and bear the same basic meaning [as Title VII] but are consistent with the structure and objectives of the FHA.").  Indeed, the Court noted that the statutes had the same "central purpose." *Id.* at 2521 ("The FHA, like Title VII and the ADEA, was enacted to eradicate discriminatory practices within a sector of our Nation's economy.").  Accordingly, Defendants' emphasis on this Court's – and the Eighth Circuit's – Title VII case law is warranted, given the inherent relevance.

religion, sex, familial status, or national origin"; or "[t]o make, print, or publish, or cause to be made, printed, or published any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on race, color, religion, sex, handicap, familial status, or national origin, or an intention to make any such preference, limitation, or discrimination."   42 U.S.C.  § 3604(a), (c).   Accordingly, sexual orientation is not expressly protected under the FHA.

Further, numerous courts have agreed that sexual orientation is not covered by the statute. *See, e.g., Smith v. Mission Associates Ltd. Partnership*, 225 F.Supp.2d 1293, 1299 (D. Kansas 2002) ("Sexual orientation claims are not actionable under the FHA[.]"); *Thomas v. Wright*, No. 2:14–cv–01604–RDP, 2014 WL 6983302, *3 (N.D. Ala. Dec. 10, 2014) ("The FHA does not prohibit discrimination based on sexual orientation in the sale or rental of housing."); *Ordelli v. Mark Farrell & Associates*, No. 3:12–cv–1791–SI, 2013 WL 1100811, *2 (D. Oregon March 15, 2013) ("While Oregon state law prohibits discrimination based on sexual orientation in the sale or rental of housing, . . . the FHA does not."); *Miller v. 270 Empire Realty LLC*, No. 09–CV–2857 (RJD)(RER), 2012 WL 1933798, *5 (E.D. N.Y. April 6, 2012) ("Whether [the defendant] knew of [the plaintiff's] sexual orientation is irrelevant because [the plaintiff's] FHA claims are not, nor could they be, based on [the plaintiff's] sexual orientation."); *Swinton v. Fazekas*, No. 06-CV-6139T, 2008 WL 723914, *5 (W.D. N.Y. March 14, 2008) ("Discrimination based on sexual orientation is not covered under the Federal Housing Act[.]"); *Fair Housing Center of Washtenaw County, Inc. v. Town and Country Apartments*, No. 07–10262, 2009 WL 497402, *3, n. 1 (E.D. Mich. Feb. 26, 2009) ("Sexual orientation is not protected under the FHA."). Furthermore, Congress has rejected several proposed amendments to the FHA that would have prohibited housing discrimination on the basis of sexual orientation.  Since 2009, there have been

at least seven such legislative efforts in Congress, all of which were rejected.  *See, e.g.,* Fair and Equal Housing Act of 2017, S. 1328, 115th Cong. (2017-2018); Fair and Equal Housing Act of 2017, H.R. 1447, 115th Cong. (2017-2018); HOME Act of 2013, S. 1242, 113th Cong. (2013-2014); HOME Act of 2013, H.R. 2479, 113th Cong. (2013-2014); HOME Act of 2011, S. 1605, 112th Cong. (2011-2012); HOME Act of 2011, H.R. 3030, 112th Cong. (2011-2012); Fair and Inclusive Housing Rights Act of 2010, H.R. 4820, 111th Cong. (2009-2010).

These attempts to amend the FHA have always failed. But Plaintiffs, represented by two special interest groups, are now attempting to achieve through this action what Congress has consistently and without exception declined to do – create a protected category in the FHA for sexual orientation.

Finally, to the extent the FHA recognizes sex-stereotyping claims,[10] this type of claim has been applied very narrowly, similar to this Court's narrow view of sex-stereotyping claims in the *Horton* case.  *See Osegueda*, 2015 WL 3751994, at *3-4 (noting that relief under an FHA sex-stereotyping claim would be "narrowly limited" and that "expanding such protections further would require action by Congress").  Specifically, a sex-stereotyping claim under the FHA must be "directly rooted in non-conformity with male or female gender stereotypes, *and not* directly derivative of sexual orientation as an independent and separate ground for protection."  *Id.* at *3 (emphasis added).

### 3.    Plaintiffs' Theories are Insufficient to Support Their Sex Discrimination Claims

Taking into account all of the above-cited authority, Plaintiffs have failed to state a claim under the FHA because their legal theories do not support a claim for sex discrimination.  Again,

---

[10] Neither this Court nor the Eighth Circuit has ruled on this issue.  Defendants do not concede that sex-stereotyping claims are actionable, but merely assume they are available for the purposes of their Motion.

as demonstrated by the above-referenced portions of the Amended Complaint, Plaintiffs' sex discrimination claims – no matter how Plaintiffs characterize them – rely exclusively on factors and considerations stemming from their sexual orientation.

First, to the extent Plaintiffs rely on their argument that Friendship Village's alleged consideration of Plaintiffs' homosexual relationship necessarily equates to discrimination based on sex, the statutory text/legislative history and case law clearly point to the opposite conclusion. As noted above, sexual orientation is not explicitly a protected characteristic under the FHA.  *See Horton*, 2017 WL 6536576, at *3.  Furthermore, Congress has rejected a number of proposed amendments to the FHA to prohibit discrimination on the basis of sexual orientation.  *See id.* Moreover, numerous federal district courts have found that sexual orientation-based claims are not actionable under the FHA.  *See Smith*, 225 F.Supp.2d at 1299; *Wright*, 2014 WL 6983302, at *3; *Ordelli*, 2013 WL 1100811, at *2; *Miller*, 2012 WL 1933798, at *5; *Swinton*, 2008 WL 723914, at *5; *Town and Country Apartments*, 2009 WL 497402, at *3, n. 1.  Additionally, clear precedent from this Court and the Eighth Circuit – finding sexual orientation claims precluded in the analogous Title VII context – strengthen the case for similar treatment of sexual orientation-based claims in the FHA arena.  *See Horton*, 2017 WL 6536576, at *3-4; *Williamson*, 876 F.2d at 70.  *See also Wetzel*, 2018 WL 4057365, at *3 (applying that court's prior ruling on the scope Title VII sex discrimination "with equal force" to the FHA context).

For the same reasons, Plaintiffs' claims can also be dismissed to the extent they rely on the related argument that receiving less favorable treatment based on their association with a person of a particular sex constitutes sex discrimination.  *See Horton*, 2017 WL 6536576, at *3-4 (summarily rejecting the plaintiff's "associational" sex discrimination argument on the same bases as the Court's rejection of the plaintiff's first argument).  As in *Horton*, there is no basis

here for expanding the civil rights statutes' understanding of sex discrimination to allow for this type of theory, especially given the clear legal authority indicating that sexual orientation discrimination is not prohibited.

Finally, even if sex-stereotyping claims are actionable under the FHA, that is not fatal to Defendants' Motion.  Even if such claims are available, Plaintiffs have failed to sufficiently allege such a claim, for their sex-stereotyping theory is too broad.  In each instance, Plaintiffs derive their sex-stereotyping claims directly from their sexual orientation.

In *Horton*, this Court noted that regardless of where the line may be on this issue, sex-stereotyping claims are not actionable if they are simply derived from or based on the plaintiff's sexual orientation.  And again, the FHA has been interpreted in a similarly-narrow way.  *See Osegueda*, 2015 WL 3751994, at *3-4 (noting that an FHA sex-stereotyping claim may not be "directly derivative of sexual orientation as an independent and separate ground for protection").  Here, in characterizing Plaintiffs' sex-stereotyping claims, the Amended Complaint identifies the following "traditional" sex-based stereotypes to which Plaintiffs purportedly did not conform (and on which Friendship Village is alleged to have impermissibly relied):  "that a married woman should be in a different-sex relationship; that a married woman's spouse should be a man; and that women should be attracted to and form relationships with men, not women."  *See* Amended Complaint at ¶¶ 68, 76, 78.  On their face, each of these "stereotypes" is directly derivative of Plaintiffs' sexual orientation, having nothing to do with any personal characteristics of Plaintiffs relative to stereotypical norms on appearance, demeanor, and the like.  Allowing a claim to move forward on such a broad theory of sex stereotyping would functionally make sexual orientation an "independent and separate ground for protection" because the theory would apply to and provide protection for each and every homosexual individual based on their

homosexuality, since homosexual individuals – as a general matter – do not conform to the purported "stereotypes" identified by Plaintiffs.  Accordingly, Plaintiffs' sex-stereotype claims are non-actionable because they go beyond permissible stereotype theory.  *See Horton*, 2017 WL 6536576, at *4 (noting that a sex-stereotyping claim "should not be used to bootstrap protection for sexual orientation into Title VII").

For all these reasons, Plaintiffs do not invoke an actionable theory of sex discrimination, and thus, Plaintiff's Amended Complaint fails to state a claim for sex discrimination under the FHA.   Accordingly, Defendants request that Plaintiffs' FHA claims be dismissed with prejudice.[11]

## II.   PLAINTIFFS FAILED TO STATE ANY CLAIMS AGAINST DEFENDANT FV SERVICES

Even if the Court finds that Plaintiffs have stated a claim for sex discrimination under the FHA (which Defendants respectfully state the Court should not do), the Court should still dismiss all claims against Defendant FV Services.

Plaintiffs' Amended Complaint does not allege facts sufficient to support any of Plaintiffs' claims against Defendant FV Services.  This failure makes sense, given that – as the pleadings demonstrate – FV Services did not exist until long after the alleged events forming the basis of Plaintiffs' claims.

---

[11] In *Horton*, this Court dismissed the plaintiff's sex discrimination claim with prejudice.  *See Horton*, 2017 WL 6536576, at *7.

16

As an initial matter, FV Services is only specifically mentioned in four paragraphs of the Amended Complaint, none of which contain allegations connecting FV Services to the relevant alleged events.[12]  These paragraphs merely allege:

- Paragraph 5:  "FV Services, Inc., the parent company and sole member of Friendship Village, manages the Friendship Village community and another affiliated community in St. Louis County, Friendship Village Chesterfield."

- Paragraph 6:  "Neither Friendship Village nor FV Services, Inc. is affiliated with any religion or operated by any religious institution or order. Friendship Village is open to and advertises its housing opportunities to the public.  It does not inquire about the religious beliefs or affiliations of residents or prospective residents."

- Paragraph 27:  ". . . [Defendant Friendship Village] is currently controlled and managed by Defendant FV Services, Inc. [Defendant Friendship Village] is affiliated with another, separately incorporated senior living community in St. Louis County, Friendship Village of West County d/b/a Friendship Village Chesterfield, which is also controlled and managed by Defendant FV Services, Inc."

- Paragraph 28:  "Defendant FV Services, Inc. is a Missouri nonprofit corporation with its principal place of business in St. Louis County, Missouri. FV Services, Inc. is the parent company and sole member of Defendant Friendship Village, and controls and manages Friendship Village. It is also the parent company and sole member of another senior living community, Friendship Village of West County, d/b/a Friendship Village Chesterfield."

---

[12] Although certain paragraphs in the Amended Complaint use the term "Defendants," this collective term is only used in making conclusory statements devoid of specific allegations of specific facts or events.

Amended Complaint at ¶¶ 5-6, 27-28.  In essence, the only thing Plaintiffs specifically allege about Defendant FV Services is that they _currently_ "control," "manage," and act as the "parent company" and "sole member" of Defendant Friendship Village and another "affiliated" community.

Notably, and perhaps intentionally, nowhere in the Amended Complaint do Plaintiffs allege that FV Services controlled or managed or was organizationally related to Defendant Friendship Village during the relevant time frame.[13]  The above-listed allegations on these topics only relate to the "current" status of these entities.  Plaintiffs make no allegations concerning when FV Services began managing or controlling Friendship Village, or when it became the "parent company" or "sole member" of Friendship Village.  Conversely, the Amended Complaint specifically claims that "Friendship Village was managed by Life Care Services, LLC" "[u]ntil February 28, 2017."  Amended Complaint at ¶ 14.  The alleged discriminatory conduct and other related purported events allegedly took place in the spring and summer of 2016.  Amended Complaint at ¶¶ 1, 2, 8, 9, 10, 11, 12, 15, 16, 39, 44, 45, 46, 49, 50, 53, 54, 64, 79, 80.

Similarly, nowhere in the Amended Complaint do Plaintiffs allege specific facts that – if true – would show that FV Services took part in any of the specific acts, omissions, conversations, or documents around which Plaintiffs' claims revolve.  Rather, all of the Amended Complaint's allegations concerning specific allegedly-discriminatory conduct (i.e., refusal to sell/rent and discriminatory notices/statements) specifically identify Defendant Friendship Village (and them alone) as the relevant actor.[14]  For example:

---

[13] The alleged discrimination took place in 2016.

[14] As evidenced by its very first paragraph, the Amended Complaint specifically indicates that references to "Friendship Village" are intended to mean Defendant Friendship Village Sunset

- The Amended Complaint repeatedly makes specific reference to "Friendship Village" discriminating against Plaintiffs and/or denying them admission or Plaintiffs being told that "Friendship Village" would not accept them.  Amended Complaint at ¶¶ 1, 2, 11, 50, 67, 80.

- In identifying/describing specific individuals with whom Plaintiffs spoke, and in alleging specific statements that were made to Plaintiffs by those individuals, the Amended Complaint only references Friendship Village.  Amended Complaint at ¶¶ 8, 11, 12, 39, 44, 53, 80.

- The Amended Complaint's references to the Cohabitation Policy clearly describe it as Friendship Village's Policy, "set by Friendship Village's board of directors."  Amended Complaint at ¶¶ 53, 54.

- Each allegation concerning Life Care Services purportedly communicating disapproval of the Cohabitation Policy specifically identifies Friendship Village and "the Board of Directors of Friendship Village" as the recipients of those communications.  Amended Complaint at ¶¶ 14, 16, 63, 64.

- The Amended Complaint specifically alleges that Friendship Village "actively recruited" and "encouraged" Plaintiffs, sending brochures and other promotional materials.  Amended Complaint at ¶¶ 42, 71.

- The Amended Complaint identifies Friendship Village as the party to whom Plaintiffs' deposit check was written, and it was Friendship Village's interim executive director who Plaintiffs alleged would have signed the wait list agreement.  Amended Complaint at ¶¶ 45, 46.

---

Hills, which is also referred to as "Friendship Village or "Defendant Friendship Village" in this Memorandum.  *See* Amended Complaint at ¶ 1.

- The Amended Complaint specifically points out that the July 29, 2016 letter from Mike Heselbarth appeared on "the letterhead of Friendship Village Sunset Hills" and referred to the Cohabitation Policy as "the long-standing policy of Friendship Village Sunset Hills."  The Amended Complaint also alleges that Friendship Village drafted the letter and that Friendship Village directed Mike Heselbarth to issue it.  Amended Complaint at ¶¶ 15, 54.

- The Amended Complaint indicates that Plaintiffs only filed their HUD complaint against Friendship Village,[15] and Plaintiffs' allegations concerning HUD's investigatory findings relate only to what the investigation purportedly "revealed" about Friendship Village.  Amended Complaint at ¶¶ 60, 63, 65.

- Plaintiffs' two exhibits attached to the Amended Complaint – the July 29, 2016 letter and the Cohabitation Policy – both on their face relate to Friendship Village specifically.

In other words, the only defendant against whom substantive factual allegations have been made relating to alleged discrimination is Defendant Friendship Village.

Finally, and on a more basic level, nothing in the Amended Complaint alleges or even suggests that FV Services existed during the relevant time period.  Plaintiffs make no allegations concerning how long FV Services has existed, but the pleadings as a whole demonstrate that FV Services did not come into existence until the spring of 2017, long after the allegedly discriminatory acts alleged in the Amended Complaint.  *See* Answer at ¶¶ 5, 27; Exhibit A to Answer.

In sum, the Amended Complaint lacks any allegation connecting Defendant FV Services to the events that form the basis of Plaintiffs' claims.  The Amended Complaint simply alleges

---

[15] As noted above, Plaintiffs' administrative complaint did not name FV Services as a respondent or otherwise reference FV Services.

that FV Services *now*, *currently* controls and manages Friendship Village.  But that is not enough to state a claim against FV Services for alleged 2016 events.  Further, Plaintiffs in no way allege liability based on any sort of successor-in-interest relationship.  Rather, they merely allege that the defendant entities are liable through agency principles.  Amended Complaint at ¶¶ 29, 30, 66, 70, 72, 79, 80.  But the pleadings establish that FV Services was formed long after the relevant time period; its agents could not have rendered it liable for events in 2016 because it did not have agents in 2016.

For all these reasons, Plaintiffs have failed to state any claim against Defendant FV Services, and all of Plaintiffs' claims in the Amended Complaint directed to FV Services must be dismissed.

<u>**CONCLUSION**</u>

For the foregoing reasons, Plaintiffs have failed to state a claim for sex discrimination under the FHA, and Plaintiffs have failed to state any claim against Defendant FV Services. Judgment on the pleadings for each of Plaintiffs' claims is appropriate, and the claims should be dismissed with prejudice.  Accordingly, Defendants respectfully request that the Court grant its Motion for Judgment on the Pleadings in its entirety and dismiss these claims with prejudice.

Respectfully submitted,

**HUSCH BLACKWELL LLP**

By: */s/ Brad Hiles*
    Brad Hiles, #28907MO
    Brian Stair, #67370MO
    190 Carondelet Plaza, Suite 600
    St. Louis, MO  63105
    Phone: 314-480-1500
    Fax: 314-480-1505
    brad.hiles@huschblackwell.com
    brian.stair@huschblackwell.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that the foregoing was filed with the Court via the Court's CM/ECF System and thus served upon all parties of record this 19th day of October, 2018.


*/s/ Brad Hiles*