UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MARY WALSH and ) | |
| BEVERLY NANCE, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 4:18-cv-1222 |
| ) | |
| FRIENDSHIP VILLAGE OF SOUTH ) | |
| COUNTY d/b/a FRIENDSHIP VILLAGE ) | |
| SUNSET HILLS and ) | |
| FV SERVICES, INC., ) | |
| ) | |
| Defendants. ) | |

## DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION FOR JUDGMENT ON THE PLEADINGS

Defendants Friendship Village of South County d/b/a Friendship Village Sunset Hills ("Friendship Village" or "Defendant Friendship Village") and FV Services, Inc. ("FV Services" or "Defendant FV Services") (collectively, "Defendants"), by and through their attorneys, file this Reply Memorandum in Support of their Motion for Judgment on the Pleadings.

## INTRODUCTION

Plaintiffs' Memorandum in Opposition (hereinafter, "Response") is a scattershot attempt to inject confusion and uncertainty into an otherwise simple narrative:  Plaintiffs are alleging that they received differing and adverse treatment under Defendant Friendship Village's Cohabitation Policy based on their sexual orientation.  Regardless of Plaintiffs' characterizations of their claims, the Policy (by its own terms) treats homosexual men and women the same, and certain male-male and female-female residency arrangements are permitted under the alleged policy. So, on the face of the policy (and the pleadings), the real reason for Friendship Village's alleged treatment of Plaintiffs is not sex but their sexual orientation.  And importantly, in their attempt to

squeeze their claims into the mold of sex discrimination, Plaintiffs fail to distinguish their legal theory from one that would establish sexual orientation as an independent and separate protected class.

For these reasons, and the reasons discussed below and in Defendants' initial Memorandum in Support of their Motion (hereinafter, "Memorandum in Support"), Defendants respectfully request that the Court grant their Motion for Judgment on the Pleadings in its entirety and dismiss Plaintiffs' claims with prejudice.

## ARGUMENT

**I.     PLAINTIFFS FAIL TO STATE A CLAIM FOR SEX DISCRIMINATION UNDER THE FAIR HOUSING ACT**

Plaintiffs' Response attempts to distract the Court from the realities of Plaintiffs' legal theories and relevant case law.  The Response suggests that the Court need not reach the issue of whether discrimination based on sexual orientation is inherently sex discrimination (Response at 17).  But – as explained in both Defendants' initial Memorandum in Support and this Reply – Plaintiffs are basing their claims entirely upon the existence of (and Defendant Friendship Village's consideration of) Plaintiffs' lesbian relationship.  And importantly, Plaintiffs fail to provide any type of distinction that would allow the Court to find in Plaintiffs' favor without also making sex discrimination claims available for all sexual orientation-based treatment.  Plaintiffs' Response merely reinforces the point made by Defendants' Motion:  Plaintiffs' claims are completely dependent upon their sexual orientation, and they offer no dividing line that distinguishes their legal theory from one that would always protect sexual orientation status through the "sex discrimination" prohibition.

Not surprisingly, Plaintiffs spend most of their Response ignoring the most relevant case law (e.g., *Horton v. Midwest Geriatric Management, LLC*, No. 4:17CV2324 JCH, 2017 WL

2

6536576 (E.D. Mo. Dec. 21, 2017)).  For instance, Plaintiffs dedicate a portion of their Response to arguing that *Williamson v. A.G. Edwards & Sons, Inc.*[1] has no bearing on this case.  Response at 16-17.  But this Court has already expressed its disagreement with that position, directly applying *Williamson* to (and finding it dispositive in) a civil rights sex discrimination claim involving sexual orientation.  *Horton*, 2017 WL 6536576 at *3-4.  Similarly, Plaintiffs contend that Congress's unsuccessful efforts to amend the FHA (to protect sexual orientation) are irrelevant to the instant matter.  Response at 18, n. 6.  Yet the Court considered, as it should, similar failed amendments in rejecting the sex discrimination claim in *Horton*.  *Horton*, 2017 WL 6536576 at *3.  Plaintiffs' only real acknowledgment of the *Horton* decision appears in the form of a request that the Court simply change its mind and rule inconsistently with that decision.  Response at 17, n. 5.

Defendants respectfully request that the Court ignore Plaintiffs' attempts to distract the Court and dismiss Plaintiffs' claims in accordance with the logic and rationale of the relevant case law noted by Defendants.

### A.  *Plaintiffs Are Not Alleging Straightforward Sex Discrimination*

Despite their assertions to the contrary, Plaintiffs are not alleging straightforward sex discrimination.  As an initial matter, Plaintiffs mischaracterize Defendants' argument on this issue by falsely contending that Defendants are asserting that there is an evidentiary "similarly-situated" element for sex discrimination claims that plaintiffs are required to show/establish in every sex discrimination case.  Response at 8.  In actuality, Defendants noted and emphasized the "similarly-situated" principle in their Memorandum in Support in order to show its clear relevance to sex discrimination claims.  This principle (of differing treatment of men and

---

[1] 876 F.2d 69 (8th Cir. 1989).

women) reflects an important distinction between the relevant considerations of a straightforward sex discrimination claim versus Plaintiff's purported sex discrimination claim. Thus, Defendants do not claim there to be a "similarly-situated" elemental requirement, but simply bring up the principle to note the types of situations that "sex discrimination" prohibitions are meant to remedy.

Defendants' point is clearly demonstrated by the very case that Plaintiffs' emphasize in their Response – *Lewis v. Heartland Inns of America, L.L.C.*, 591 F.3d 1033 (8th Cir. 2010) – which states, "The Supreme Court has stated that '[t]he critical issue' in a sex discrimination case is 'whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed.'" *Lewis*, 591 F.3d at 1040 (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998)).  Accordingly, Defendants do <u>not</u> argue that each female plaintiff in every sex discrimination case must present evidence that similarly-situated males were – in fact/in actuality – treated differently.  Rather, Defendants simply emphasize – as supported by case law – that a violation of the sex discrimination prohibition does not occur if the allegedly-discriminatory policy would apply equally to similarly-situated males and females, because they are not exposed to terms/conditions to which the other sex is exposed.  And more to the point, whether gay males and lesbian females would be treated differently under the Cohabitation Policy speaks directly to whether sex discrimination could have occurred and, thus, whether sex discrimination has truly been alleged.

Given the relevance of these considerations, the pleadings make clear that Plaintiffs have not alleged sex discrimination, but rather have alleged differing treatment based on sexual orientation.  The Cohabitation Policy – even as alleged by Plaintiffs – prohibits both male same-sex couples and female same-sex couples from sharing a single unit. Plaintiffs concede that male

4

same-sex couples would also be denied a single unit at Friendship Village. *See* Amended Complaint at ¶¶ 55, 57. Further, the Cohabitation Policy does not inherently prohibit two females from sharing a unit and allows for multiple scenarios whereby two females (or two males) could live together. *See* Amended Complaint at ¶ 55. Indeed, the pleadings as a whole demonstrate that it was the added factor/consideration of Plaintiffs' sexual orientation that was dispositive here. Accordingly, sex is not the distinguishing factor in Friendship Village's alleged conduct, but rather sexual orientation.

Despite this clear distinction, Plaintiffs argue that they have alleged actionable sex discrimination. But it is absurd – and contrary to precedent, such as *Lewis* – to say that gay men and lesbian women are both victims of sex discrimination as a result of both being subject to the same exact treatment under the same exact policy. And finding such circumstances to constitute sex discrimination would create a blanket protection based on sexual orientation under the "sex discrimination" prohibition. That is simply not what the law provides for, and to make such a finding would constitute a massive shift in the law applicable to this Court.

In sum, "if something looks like a duck, walks like a duck, and quacks like a duck, it is probably a duck," and Plaintiffs' claims "quack" much more like sexual orientation discrimination than sex discrimination. *See West Virginia ex rel. McGraw v. CVS Pharmacy, Inc.*, 646 F.3d 169, 185 (4th Cir. 2011) (dissenting) ("To my mind, this case 'quacks' much more like a CAFA class action than a *parens patriae* case.")

### B.     This Court Has Rejected Plaintiffs' Associational Theory in This Exact Context

Plaintiffs' Response fails to demonstrate that Plaintiffs are entitled to pursue their claims based on an associational theory. In their attempt to do so, Plaintiffs cite case law involving race-based associational discrimination to suggest that an associational theory can provide

5

protection based on Plaintiffs' sexual orientation. Response at 10-12. Once again, however, Plaintiffs ignore this Court's consideration and rejection of this very argument pursuant to longstanding Eighth Circuit precedent. *Horton*, 2017 WL 6536576 at *4 (acknowledging the existence of *Loving v. Virginia* but nonetheless rejecting an associational claim involving sexual orientation in the sex discrimination context, pursuant to *Williamson*). Like the plaintiff in *Horton*, Plaintiffs here may not use the associational theory from the race discrimination context to overcome *Williamson* and the basic principle that sexual orientation is not a protected class under current law. Further, the alleged discrimination in this case is distinguishable from that in the race association cases: Plaintiffs have not alleged that the Cohabitation Policy inherently prohibits two women from living with each other, whereas the discrimination in *Loving* and its progeny involved the type of racist policies and practices that generally barred white and black individuals from associating. Again, this case involves the added consideration of Plaintiffs' sexual orientation, which is the dispositive factor under the alleged Cohabitation Policy.

Accordingly, Plaintiffs' associational theory arguments are unavailing.

### C. Plaintiffs' All-Inclusive Sex-Stereotyping Theory is Not Permitted

Plaintiffs' Response does nothing to overcome or even distinguish the most relevant case law, which does not permit the broad type of sex-stereotyping claims Plaintiffs seek to bring here. The Response highlights less-germane cases like *Price Waterhouse* (Response at 15), but Defendants do not deny the general existence of sex-stereotyping claims in certain areas of the civil rights realm. Nor do Defendants deny the existence of the *Smith v. Avanti* decision emphasized by Plaintiffs, which would perhaps be helpful to Plaintiffs if the present case were brought in the District of Colorado. But Defendants emphasize – and Plaintiffs' Response ignores – that *Horton* addressed this exact issue. Indeed, it is clear from *Horton* that a wholesale

6

inclusion of sexual orientation-based protection (whereby a sex-stereotyping claim would always exist because a gay or lesbian individual will always be found to not be conforming to the typical example of heterosexual attraction) is not within the proper scope of stereotyping claims.  But that type of wholesale inclusion is exactly what Plaintiffs are requesting here; that is the type of theory Plaintiffs are alleging.

As discussed in Defendants' initial Memorandum in Support, this Court rightly noted in *Horton* that "[c]ourts have routinely rejected attempts to use a sex-stereotyping theory to bring . . . what is in essence a claim for discrimination on the basis of sexual orientation." *Horton*, 2017 WL 6536576 at *4 (brackets in original) (quoting *Pambianchi v. Arkansas Tech University*, No. 4:13CV46 KGB, 2014 WL 11498236, at *4 (E.D. Ark. Mar. 14, 2014)).  This Court further stated:

> In order to determine whether a plaintiff has stated a claim for discrimination, "most courts generally attempt to distinguish between discrimination based on stereotypical notions of femininity and masculinity and that based on sexual orientation, determining the former is actionable . . . while the latter is not." . . . Courts have acknowledged the difficulty in drawing a line between sex stereotypes and notions of heterosexuality and homosexuality.  Nevertheless, most courts determine the distinction is necessary to adhere to binding precedent that sexual orientation is not a protected characteristic[.]

*Id.* (quoting *Pambianchi*, 2014 WL 11498236, at *5).  Ultimately, the Court determined that the plaintiff's sex-stereotyping claim was non-actionable because it was directly derived from his sexual orientation.  *Id.* ("Sexual orientation alone cannot be the alleged gender non-conforming behavior that gives rise to an actionable . . . claim under a sex-stereotyping theory[.]") (quoting *Pambianchi*, 2014 WL 11498236, at *5).

As in *Horton*, the Court here "need not struggle with exactly where to draw the line between actionable discrimination based on what is alleged to be gender non-conforming behavior and non-actionable discrimination based on sexual orientation," because as in *Horton*,

7

Plaintiffs' allegations make clear that their "theory of sex-stereotyping is based solely on [their] sexual orientation." *See id.* The purported sex-based stereotypes offered by Plaintiffs here are part and parcel of their sexual orientation: "that a married woman should be in a different-sex relationship; that a married woman's spouse should be a man; and that women should be attracted to and form relationships with men, not women." *See* Amended Complaint at ¶¶ 68, 76, 78. Each of these purported stereotypes are "directly derivative of sexual orientation," and permitting a sex-stereotyping claim based on such would impermissibly treat sexual orientation "as an independent and separate ground for protection." *See Thomas v. Osegueda*, No. 2:15–CV–0042–WMA, 2015 WL 3751994, *3-4 (N.D. Ala. June 16, 2015) (rejecting the viability of the plaintiff's FHA sex-stereotyping claim under such circumstances); *Horton*, 2017 WL 6536576, at *4 (noting that a sex-stereotyping claim "should not be used to bootstrap protection for sexual orientation"). Nowhere in Plaintiffs' Response do they refute the fact that their theory would enshrine sexual orientation as a *de facto* protected category, failing to provide a line that distinguishes their type of stereotyping claim from the type that the *Horton* decision found non-actionable.

Accordingly, the most relevant decision from this Court demonstrates that the specific type of sex-stereotyping claim Plaintiffs are pursuing is impermissible because it would apply to every single gay and lesbian individual simply based on their sexual orientation. Thus, Plaintiffs' sex-stereotyping theory is not actionable.

### D.  *Plaintiffs' § 3604(c) Claims Do Not Survive*

In their Response, Plaintiffs appear to be suggesting that their § 3604(c) claims should survive Defendants' Motion even if the Court rules in Defendants' favor on the above-discussed issues. Response at 10. This is simply inaccurate. Both Plaintiffs' discriminatory refusal claims

8

and their discriminatory statement claims are based on the same flawed assumption and legal theory that Friendship Village's alleged conduct – based on Plaintiffs' sexual orientation – constitutes sex discrimination.  And again, the Cohabitation Policy – on its face – does not favor one sex over the other.  Thus, for the same reasons discussed above – and in Defendants' initial Memorandum in Support – Plaintiffs' § 3604(c) claims are also subject to dismissal and indeed should be dismissed.

## II. ANY CLAIMS AGAINST DEFENDANT FV SERVICES SHOULD BE DISMISSED

Even if the Court finds that Plaintiffs have stated a claim for sex discrimination under the FHA (which Defendants respectfully state the Court should not do), the Court should still dismiss all claims against Defendant FV Services, as Plaintiffs fail to demonstrate why Defendant FV Services should remain in this case.

In their Response, Plaintiffs make two arguments concerning Defendants' request to dismiss FV Services:  (1) FV Services is vicariously liable for the actions of Defendant Friendship Village; and (2) FV Services' presence is necessary for complete and meaningful injunctive relief.  Response at 18.

Regarding (1), Plaintiffs fail to appreciate the existence of limited liability for members of Missouri non-profit corporations.  *See* Mo. Rev. Stat. § 355.197.1.  Plaintiffs' extremely limited allegations concerning FV Services (noted below) are insufficient to overcome this statutory provision of limited liability.

Plaintiffs also appear to be suggesting that their claims are founded on allegations of FV Services' current relationship with Friendship Village.  Although Plaintiffs' Amended Complaint includes certain allegations concerning present-day circumstances, their actual claims (discriminatory refusal and discriminatory statement) are based solely on events allegedly taking

9

place in 2016, when FV Services did not exist. Memorandum in Support at 16-21. Plaintiffs' only allegations specifically about FV Services are that they currently "control," "manage," and act as the "parent company" and "sole member" of Defendant Friendship Village and another "affiliated" community, and the Amended Complaint lacks any allegation connecting Defendant FV Services to the events that form the basis of Plaintiffs' claims. *Id.*

Regarding (2), Plaintiffs promote an unsustainably broad view of Federal Rule of Civil Procedure 19(a)(1). By Plaintiffs' logic, any time a plaintiff seeks injunctive relief against wholly-owned subsidiary, the parent company must be joined. This, of course, is not the rule, and the cases cited by Plaintiffs (*Helzberg's Diamond Shops, Inc. v. Valley W. Des Moines Shopping Ctr., Inc.*, and *Mandina v. Lynn*) do not support such a rule. In *Helzberg's Diamond Shops*, the plaintiff was seeking injunctive relief that would have prevented another store at the mall from operating as it desired, so that other store "was a party to be joined if feasible." 564 F.2d 816, 818 (8th Cir. 1977). But even in that case, both the District Court and Eighth Circuit agreed that the store was not an indispensable party. *Id.* at 819. The other case cited by Plaintiff – *Mandina*, an action brought against the HUD Secretary – is also distinguishable. There, the district court joined the company that had overseen the plaintiff's housing application (which was denied by HUD) in order "to assure that the status quo of the plaintiff's application be maintained during the pendency of this litigation." 357 F. Supp. 269, 277 (W.D. Mo. 1973).[2] Neither of these cases require – or even suggest – that Defendant FV Services is a required party here.

Finally, Plaintiffs incorrectly contend that they would have no recourse if – assuming they obtain a judgment against or enter into a voluntary settlement agreement with Friendship

---

[2] As made clear by the pleadings, FV Services did not oversee Plaintiffs' residency application in the present case.

10

Village – Defendants refuse to comply with any such judgment or settlement.  Response at 20-21.  As an initial matter, Defendants take exception to Plaintiffs' accusation that Defendants would brazenly violate a Court Order or settlement agreement.  But regardless, the Court would have sufficient remedial authority over any failure to comply with the Court's would-be judgment, and the Court could address any issues as needed without requiring FV Services to remain in this lawsuit.  Again, under Plaintiffs' rationale, all parent companies would need to become parties out of a baseless fear that the parent company would thwart the subsidiary's efforts to comply with a Court Order or settlement agreement.

For these reasons, all of Plaintiffs' claims in the Amended Complaint directed to FV Services must be dismissed.

### III. PLAINTIFFS SHOULD NOT USE THIS COURT TO ACCOMPLISH WHAT LEGISLATORS HAVE DECLINED TO DO

*"[T]he proper role of the judiciary"* . . . *"[is] to apply, not amend, the work of the People's representatives."*  Justice Neil Gorsuch, writing for the unanimous Supreme Court in *Henson v. Santander Consumer USA Inc.,* 137 S.Ct. 1718, 1726 (2017).

Defendants respectfully request that the Court view Plaintiffs' arguments for what they really are – an attempt to make sexual orientation an independent, standalone protected class in the realm of housing (and, likely by extension, employment[3]) discrimination.  Such attempts to amend legislation may be proper with Congress and the Missouri Legislature, but not the courts.  Plaintiffs are represented in this case by – among others – the ACLU of Missouri Foundation.  For at least 20 years, the ACLU of Missouri Foundation has tried to persuade the Missouri legislature to add sexual orientation as a protected class under the Missouri Human Rights Act

---

[3] If the Court rules in favor of Plaintiffs, the ACLU of Missouri Foundation (and other similar organizations) will surely use this Court's denial of the present Motion to undermine the Court's decision in *Horton* and argue that sexual orientation is a protected class in the employment context.

11

(MHRA). Each time, the effort has failed. Like the MHRA, the FHA does not protect individuals based upon their sexual orientation, and Defendants' initial Memorandum in Support discusses the efforts to amend the FHA over the last several years. If the present Motion is denied and Plaintiffs are allowed to proceed on their FHA claims, they will have used this Court to accomplish what Congress[4] and the Missouri legislature has steadfastly declined to do for years. This would be in stark contrast to what the Supreme Court has described as "the proper role of the judiciary": "to apply, not amend, the work of the People's representatives." *Henson v. Santander Consumer USA Inc.*, 137 S.Ct. 1718, 1725-1726 ("[I]t is never our job to rewrite a constitutionally valid statutory text under the banner of speculation . . . . [T]hese are matters for Congress, not this Court, to resolve.").

## CONCLUSION

By emphasizing non-germane cases and rejected legal theories, Plaintiffs seek to distract the Court from what should be a straightforward application of this Court's prior ruling and other relevant precedent concerning the scope of sex discrimination. Further, Plaintiffs wish to impose unnecessary burdens on a party that had no involvement in Friendship Village's alleged treatment of Plaintiffs in 2016. Based on the foregoing discussion, as well as Defendants' initial Memorandum in Support, Plaintiffs have failed to state a claim for sex discrimination under the FHA, and Plaintiffs have failed to state any claim against Defendant FV Services. Judgment on the pleadings for each of Plaintiffs' claims is appropriate, and the claims should be dismissed with prejudice. Accordingly, Defendants respectfully request that the Court grant their Motion for Judgment on the Pleadings in its entirety and dismiss these claims with prejudice.

---

[4] *See* Memorandum in Support at 12-13.

DocID: 4844-5067-2513.3

        Respectfully submitted,

        **HUSCH BLACKWELL LLP**

By: */s/ Brad Hiles*
    Brad Hiles, #28907MO
    Brian Stair, #67370MO
    190 Carondelet Plaza, Suite 600
    St. Louis, MO  63105
    Phone: 314-480-1500
    Fax: 314-480-1505
    brad.hiles@huschblackwell.com
    brian.stair@huschblackwell.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

    The undersigned counsel hereby certifies that the foregoing was filed with the Court via the Court's CM/ECF System and thus served upon all parties of record this 3rd day of December, 2018.

    */s/ Brad Hiles*

13