UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MARY WALSH and<br>BEVERLY NANCE,<br><br>    Plaintiffs,<br><br>v.<br><br>FRIENDSHIP VILLAGE OF SOUTH<br>COUNTY d/b/a FRIENDSHIP VILLAGE<br>SUNSET HILLS and<br>FV SERVICES, INC.,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)   Cause No. 4:18CV1222 JCH<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants Friendship Village of South County d/b/a Friendship Village Sunset Hills ("Friendship Village") and FV Services, Inc.'s Motion for Judgment on the Pleadings, filed October 19, 2018. (ECF No. 33). The motion is fully briefed and ready for disposition.

## BACKGROUND

Plaintiffs Mary Walsh and Beverly Nance are a married couple[1], who have been in a committed relationship with each other for nearly four decades. (Amended Complaint ("Amended Complaint" or "Compl."), ¶ 1). Ms. Walsh and Ms. Nance, 72 and 68-years old respectively, desired to move out of their single-family home and into a senior community. (*Id.*, ¶ 3). In or around the spring of 2016, Plaintiffs began investigating Friendship Village, a senior living community that opened in 1978 and offers senior apartments, assisted living and skilled

---

[1] Ms. Walsh and Ms. Nance legally married in Massachusetts on July 30, 2009. (Compl., ¶ 32).

1

nursing facilities. (*Id.*, ¶¶ 4, 8, 39).[2] They visited the facility multiple times, interacting with residents and staff, had extensive conversations about pricing and floorplans with the community's Residence Director, Carmen Fronczak, and ultimately submitted a deposit of $2,000 and signed a wait list agreement on July 22, 2016. (*Id.*, ¶¶ 8, 45).[3]

On July 25, 2016, Ms. Fronczak called Ms. Walsh and asked about the nature of her relationship with Ms. Nance. (Compl., ¶ 10). Ms. Walsh informed Ms. Fronczak that they were married. (*Id.*). Ms. Fronczak called Ms. Walsh a second time on July 27, 2016, and informed her that Friendship Village's Cohabitation Policy did not permit Plaintiffs to share a single residency unit at Friendship Village. (*Id.*, ¶ 11 and Defendants' Answer thereto).

Ms. Walsh later received a letter dated July 29, 2016, from Mr. Michael Heselbarth, Corporate Operations Director of Friendship village, in which he stated in relevant part as follows: "Your request to share a single unit does not fall within the categories permitted by the long-standing policy of Friendship Village Sunset Hills, a copy of which is enclosed." (Compl., att. Exh. 1).[4] The Friendship Village Cohabitation Policy, attached to Mr. Heselbarth's letter, in turn provides in relevant part as follows:

> It is the policy of Friendship Village Sunset Hills, consistent with its long-standing practice of operating its facilities in accordance with biblical principles

---

[2] FV Services is the sole member of Friendship Village, and since July 1, 2017, FV Services has managed Friendship Village and Friendship Village Chesterfield. (Defendants' Answer to Plaintiffs' Amended Complaint, ¶ 5). According to Defendants, FV Services did not exist prior to March, 2017. (*Id.*).

[3] According to Defendants, Plaintiffs' check was never cashed and was promptly returned by Friendship Village. (Defendants' Answer, ¶ 45).

[4] "It is well-settled that when considering a motion for judgment on the pleadings, the court generally must ignore materials outside the pleadings, but may consider some materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings." *Kaenel v. Armstrong Teasdale, LLP*, 2018 WL 3631249, at *2 (E.D. Mo. Jul. 31, 2018) (citations omitted).

>and sincerely-held religious standards, that it will permit the cohabitation of residents within a single unit only if those residents, while residing in said unit, are related as spouses by marriage, as parent and child or as siblings. The term "marriage" as used in this policy means the union of one man and one woman, as marriage is understood in the Bible….
>
>This policy, which has applied to all new residents for many years, will continue to apply to all new residents.

(*Id.*, att. Exh. 2).

On or about October 25, 2016, Plaintiffs filed a housing discrimination complaint against Friendship Village with the U.S. Department of Housing and Urban Development ("HUD"), alleging unlawful discrimination on the basis of sex. (Compl., ¶ 60).[5] According to Plaintiffs, HUD referred the complaint to the MCHR for investigation on October 27, 2016, but the MCHR voluntarily waived the complaint back to HUD for investigation on December 6, 2016. (*Id.*, ¶ 61).[6] HUD then conducted an investigation from December 6, 2016, until June 6, 2018, when Plaintiffs voluntarily withdrew their complaint so that they could pursue their claims against Defendants in federal court. (*Id.*, ¶ 62).[7]

Plaintiffs filed their original Complaint in this matter on July 25, 2018, alleging discrimination on the basis of sex in violation of both the Fair Housing Act ("FHA") and the Missouri Human Rights Act. (ECF No. 1). In their Amended Complaint, filed October 5, 2018, Plaintiffs reassert only their FHA claim. (ECF No. 29). Specifically, Plaintiffs allege each Plaintiff was denied housing at Friendship Village "because of her own sex (female) and because

---

[5] According to Defendants, Plaintiffs' complaint was dually filed with the Missouri Commission on Human Rights ("MCHR"), and alleged discriminatory refusal to rent on the bases of sex and religion. (Defendants' Answer, ¶ 60).

[6] Defendants maintain the MCHR waived the case back to HUD because it lacked jurisdiction over the type of discrimination alleged in the complaint. (Defendants' Answer, ¶ 61).

[7] According to Defendants, prior to withdrawing their complaint, Plaintiffs amended the complaint to add claims of "discriminatory advertising, statements and notices" and "discriminatory terms, conditions, privileges, or services and facilities". (Defendants' Answer, ¶ 62).

of the sex of her spouse (female), since if either Plaintiff had been a man married to a woman, they would not have been denied housing.  Furthermore, Defendants denied Plaintiffs housing because they do not conform to traditional sex stereotypes, including that a married woman should be in a different-sex relationship; that a married woman's spouse should be a man; and that women should be attracted to and form relationships with men, not women."  (*Id.*, ¶ 76).

As stated above, Defendants filed the instant Motion for Judgment on the Pleadings on October 19, 2018, asserting Plaintiffs' claims must be dismissed for failure to state a claim upon which relief may be granted.  (ECF No. 33).

## STANDARD FOR MOTION FOR JUDGMENT ON THE PLEADINGS

In considering a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), the Court employs the same standard as when it reviews a motion to dismiss under Rule 12(b)(6).  *See Gallagher v. City of* Clayton, 699 F.3d 1013, 1016 (8th Cir. 2012); *Doe v. Rainey*, 2016 WL 2986398, at *2 (E.D. Mo. May 24, 2016).  In ruling on a motion dismiss, the Court must view the allegations in the complaint in the light most favorable to Plaintiff.  *Eckert v. Titan Tire Corp.*, 514 F.3d 801, 806 (8th Cir. 2008).  The Court, "must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party."  *Coons v. Mineta*, 410 F.3d 1036, 1039 (8th Cir. 2005) (citation omitted).  The complaint's factual allegations must be sufficient "to raise a right to relief above the speculative level," however, and the motion to dismiss must be granted if the complaint does not contain "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007) (abrogating the "no set of facts" standard for Fed.R.Civ.P. 12(b)(6) found in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).  Furthermore, "the

4

tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 555 (pleading offering only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not do)).

## DISCUSSION

The Fair Housing Act makes it unlawful to "refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(a).  Further, it is unlawful to "make, print, or publish, or cause to be made, printed, or published any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on race, color, religion, sex, handicap, familial status, or national origin, or an intention to make any such preference, limitation, or discrimination." 42 U.S.C. § 3604(c).  Sexual orientation thus is not explicitly a protected characteristic under the FHA.  Plaintiffs nevertheless maintain Defendants unlawfully discriminated against them on the basis of sex when they refused to offer Plaintiffs a unit at Friendship Village, in that they:  (1) treated Plaintiffs less favorably because of their sex; (2) treated Plaintiffs less favorably because of their association with a person of a particular sex; and (3) treated Plaintiffs less favorably on the basis of their nonconformity with sex stereotypes, "including that a married woman should be in a different-sex relationship; that a married woman's spouse should be a man; and that women should be attracted to and form relationships with men, not women." (Compl., ¶¶ 66-68).  The Court will address Plaintiffs' contentions in turn.

5

With respect to their first claim, Plaintiffs maintain that had Ms. Walsh been a man married to Ms. Nance (or vice versa), she would not have been denied housing at Friendship Village. Plaintiffs thus assert they have presented a straightforward case of sex discrimination under the FHA, as but for their sex, Plaintiffs would not have been denied housing at Friendship Village.

Upon consideration the Court rejects this analysis, finding instead that sexual orientation rather than sex lies at the heart of Plaintiffs' claims. For example, after noting that Ms. Walsh and Ms. Nance are lesbians, "[t]hat is, they are women whose primary emotional, romantic, and sexual attractions are to other women" (Compl., ¶ 32), Plaintiffs allege as follows: "Ms. Walsh and Ms. Nance could not believe that in 2016, as a married couple, they would experience such open discrimination in their community. Earlier in their careers, Ms. Walsh and Ms. Nance had been afraid to reveal their relationship with each other or their sexual orientation at work, because they were worried they would lose their jobs. But after retiring and getting legally married, they thought they were living in a new time of increased acceptance." (*Id.*, ¶ 52). *See also Id.*, ¶ 68 ("Plaintiffs were further subjected to this discrimination because they are women who do not conform to traditional sex stereotypes, including that a married woman should be in a different-sex relationship; that a married woman's spouse should be a man; and that women should be attracted to and form relationships with men, not women."). At no time do Plaintiffs assert that had they been men involved in a same-sex relationship or marriage, they would have been admitted as residents in Friendship Village. Under these circumstances, the Court finds the claims boil down to those of discrimination based on sexual orientation rather than sex alone.

6

The Eighth Circuit has squarely held that "Title VII does not prohibit discrimination against homosexuals."[8] *Williamson v. A.G. Edwards & Sons, Inc.*, 876 F.2d 69, 70 (8th Cir. 1989), *cert. denied*, 493 U.S. 1089 (1990). *See also Pambianchi v. Arkansas Tech University*, 2014 WL 11498236, at *4 (E.D. Ark. Mar. 14, 2014) (collecting cases from other circuits so holding). A number of courts also have held that sexual orientation is not protected under the FHA. *See, e.g., Fair Housing Center of Washtenaw County, Inc. v. Town and Country Apartments*, 2009 WL 497402, at *7 n. 1 (E.D. Mich. Feb. 27, 2009) ("Sexual orientation is not protected under the FHA."); *Ordelli v. Mark Farrell & Assoc.*, 2013 WL 1100811, at *2 (D. Or. Mar. 15, 2013) ("While Oregon state law prohibits discrimination based on sexual orientation in the sale or rental of housing,…the FHA does not."); *Smith v. Mission Associates Ltd. Partnership*, 225 F.Supp.2d 1293, 1299 (D. Kan. 2002) ("Sexual orientation claims are not actionable under the FHA."). The Court recognizes that several federal courts have held otherwise in recent opinions, concluding that discrimination on the basis of sexual orientation is a form of sex discrimination. *See, e.g., Zarda v. Altitude Express, Inc.*, 883 F.3d 100, 113 (2d Cir. 2018) (en banc) (holding sexual orientation is a protected characteristic under Title VII); *Wetzel*, 901 F.3d at 862 (holding its ruling in *Hively v. Ivy Tech Community College of Indiana*, 853 F.3d 339 (7th Cir. 2017) (en banc), that sexual orientation is protected under Title VII,

---

[8] "Disparate-treatment claims under the FHA are tested under the same framework as Title VII disparate-treatment claims, the question being whether Defendant treated Plaintiffs less favorably than other[s] based on their race, color, religion, sex or national origin." *Metropolitan St. Louis Equal Housing and Opportunity Council v. City of Maplewood, Mo.*, 2017 WL 6278882, at *3 (E.D. Mo. Dec. 8, 2017) (internal quotations and citations omitted). *See also Gallagher v. Magner*, 619 F.3d 823, 831 (8th Cir. 2010) (same); *Young v. Hagar-Mace*, 2017 WL 2729103, at *2 (W.D. Mo. Jun. 23, 2017) (finding case law on appointed counsel under Title VII instructive in action under the FHA). The Court thus looks to case law on Title VII in analyzing the instant FHA claims. *See Wetzel v. Glen St. Andrew Living Community, LLC*, 901 F.3d 856, 862, 863, (7th Cir. 2018) (internal quotations and citations omitted) (noting Title VII and the FHA "have been described as functional equivalent[s] to be given like construction and application," and thus applying its earlier ruling that discrimination based on sexual orientation qualifies as discrimination based on sex under Title VII with equal force in the FHA context).

7

applies with equal force under the FHA). This Court is bound by the law of the Eighth Circuit, however. *See Hood v. United States*, 342 F.3d 861, 864 (8th Cir. 2003), *cert. denied*, 540 U.S. 1163 (2004). To date the Eighth Circuit has not changed its position on the issue, and so the Court must dismiss this portion of Plaintiffs' claim pursuant to *Williamson*.[9]

Plaintiffs next assert they was treated less favorably because of their association with a person of a particular sex, *i.e.*, their same-sex spouse. Specifically, Plaintiffs allege as follows: "If Ms. Walsh were a man seeking housing with Ms. Nance, a woman, Friendship Village would not have denied them admission. Likewise, if Ms. Walsh's spouse, Ms. Nance, were a man, Friendship Village would not have denied the couple housing. In other words, but for the sex of each Plaintiff and/or the sex of her spouse, the couple would have been able to obtain housing at Friendship Village." (Compl., ¶ 67). While the Court agrees that claims of associational discrimination are cognizable at times, Plaintiffs present no evidence that such claims are actionable with respect to classes unprotected by the statute at issue. As noted above, sexual orientation is one such unprotected class, and so this portion of Defendants' motion must be granted.

Finally, Plaintiffs maintains they was treated less favorably on the basis of their nonconformity with sex stereotypes, "including that a married woman should be in a different-sex relationship; that a married woman's spouse should be a man; and that women should be attracted to and form relationships with men, not women." (Compl., ¶ 68). Courts have recognized that "[g]ender stereotyping can violate Title VII when it influences employment decisions." *Hunter v. United Parcel Serv., Inc.*, 697 F.3d 697, 702 (8th Cir. 2012) (citing *Price*

---

[9] The Court notes that both *Zarda* and *Hively* were decisions handed down by the respective Courts of Appeals sitting en banc, and reversing earlier decisions by the district courts and circuit panels that followed circuit precedent.

8

*Waterhouse v. Hopkins*, 490 U.S. 228, 251, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989)). However, "[c]ourts have routinely rejected attempts to use a sex-stereotyping theory to bring under Title VII what is in essence a claim for discrimination on the basis of sexual orientation." *Pambianchi*, 2014 WL 11498236, at *5 (collecting cases). In order to determine whether a plaintiff has stated a claim for discrimination, "most courts generally attempt to distinguish between discrimination based on stereotypical notions of femininity and masculinity and that based on sexual orientation, determining the former is actionable under Title VII while the latter is not." *Id.* (citations omitted).

> Courts have acknowledged the difficulty in drawing a line between sex stereotypes and notions of heterosexuality and homosexuality. Nevertheless, most courts determine the distinction is necessary to adhere to binding precedent that sexual orientation is not a protected characteristic under Title VII.

*Id.* (internal citations omitted).

Upon consideration the Court finds that, as in *Pambianchi*, this Court "need not struggle with exactly where to draw the line between actionable discrimination based on what is alleged to be gender non-conforming behavior and non-actionable discrimination based on sexual orientation." *Id.* The issue is not presented here, because with their allegations Plaintiffs make clear their theory of sex-stereotyping is based solely on their sexual orientation. (*See, e.g.*, Compl., ¶¶ 18 ("By denying them housing solely because they are women who are married to one another, and by maintaining a Cohabitation Policy that excludes same-sex married couples from Friendship Village, Defendants discriminated—and continue to discriminate—against Ms. Walsh and Ms. Nance on the basis of sex in violation of the FHA."); 68 ("Plaintiffs were further subjected to this discrimination because they are women who do not conform to traditional sex stereotypes, including that a married woman should be in a different-sex relationship; that a

9

married woman's spouse should be a man; and that women should be attracted to and form relationships with men, not women."). "Sexual orientation alone cannot be the alleged gender non-conforming behavior that gives rise to an actionable Title VII claim under a sex-stereotyping theory," as "[t]o hold otherwise would be contrary to well-settled law that Title VII does not prohibit discrimination on the basis of sexual orientation." *Pambianchi*, 2014 WL 11498236, at *5 (citing *Vickers v. Fairfield Med. Ctr.*, 453 F.3d 757, 764 (6th Cir. 2006)).  *See also Phipps v. Housing Authority of New Orleans*, 2016 WL 164916, at *6 (E.D. La. Jan. 13, 2016) (internal quotations and citations omitted) ("[A] gender stereotyping claim should not be used to bootstrap protection for sexual orientation into Title VII.  Without alleging facts that would support a sex stereotyping theory, this is precisely what the plaintiff is attempting to do.").[10]

Based on the foregoing, Defendants' Motion for Judgment on the Pleadings will be granted.[11]

**CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Judgment on the Pleadings (ECF No. 33) is **GRANTED**, and Plaintiffs' Amended Complaint is **DISMISSED**.  An appropriate Judgment will accompany this Memorandum and Order.

Dated this  16th  Day of January, 2019.

                                        /s/ Jean C. Hamilton
                                        UNITED STATES DISTRICT JUDGE

---

[10] Upon consideration, the Court finds its rulings apply with equal force to Plaintiffs' claims under 42 U.S.C. § 3604(c).

[11] In light of the above ruling, the Court need not consider Defendants' assertion that Plaintiffs fail to state any claims against Defendant FV Services.